## A92A0652. GIDDEN v. THE STATE.
### (422 SE2d 30)

BEASLEY, Judge.

Gidden was convicted of burglary (entry into dwelling with intent to commit kidnapping and aggravated assault) (OCGA § 16-7-1), kidnapping (forcible abduction and stealing away of person against her will) (OCGA § 16-5-40), and aggravated assault (assault by knife and threat of bodily harm) (OCGA § 16-5-21 (a) (2)).

1. He claims that the trial court erred in failing to give the following charge, as he requested: "If you the jury determine that the witness for the State, upon whose direct evidence the state depends, has been impeached, then the evidence must exclude every reasonable hypothesis save that of guilt of the accused, before you may find the accused guilty. Otherwise, the form of your verdict should be 'not guilty.' " Defendant cited as authority *Julian v. State*, 134 Ga. App. 592, 599 (6) (215 SE2d 496) (1975), and now adds OCGA § 24-4-6, the rule regarding convictions based wholly on circumstantial evidence.

The State's evidence was that at approximately 1:00 a.m. on September 21, 1990, the defendant had abducted the victim out of her apartment, had led her to her car at knifepoint, and had forced her to drive the car to a place where he forced her to have sex with him. Then the defendant had the victim drive him to a certain location and let him out of the car.

In support of its case, the evidence the State presented was both direct and circumstantial. Several police officers testified regarding their investigation of the case. One officer testified that in response to calls regarding a suspicious person, he drove to the victim's apartment complex and actually spoke with the victim, who was already in the car with the defendant, and asked her for directions. He testified that he noticed there was a male occupant in the car and although she appeared to be somewhat distressed, he did not question her more than to get directions. When he saw her two hours later, she was in pajamas, her hair was uncombed, she appeared to have been crying, and she appeared very distressed.

One of the victim's neighbors testified that she had seen the defendant in the apartment complex earlier in the evening. She stated that the defendant had knocked on her door and asked her for a ride home, but that she never opened her door and instead called the police. Another neighbor testified that he had seen the defendant walking behind the victim to her car at about 1:00 a.m. He saw the two get in the car and then drive off. He also saw the victim when she re-

turned to the apartment complex a couple of hours later.

The victim testified that the defendant came to her apartment building and that she opened the door for him, believing that he was an acquaintance of hers. He then forced his way into the apartment and grabbed her arm and asked where her car was. He had a knife in his right hand and saw the car keys and grabbed them, took the victim out of the apartment, led her to the car, opened the car door and put her in and then got in on the other side. He put the car keys in the ignition and continued holding the knife to her side. He directed her to drive to a place where he then made her have sex.

On cross-examination, inconsistencies between the testimony of the victim at the preliminary hearing and her testimony at trial were brought out. The victim had testified at the preliminary hearing that she, not the defendant, had picked up the car keys. An inconsistency regarding the number of police cars the victim recalled seeing enter her apartment complex on that evening was also brought out. Various other inconsistencies, such as whether the defendant or the victim removed her pants, and between her testimony at trial and a statement she gave to a detective the day after the incident, were also pointed out.

Defense witnesses included the defendant. He testified that the victim voluntarily drove him home and had sex with him.

The trial court refused to give the requested charge, on the theory that if the jury found that the victim was impeached on material issues of fact, there was no circumstantial evidence which would authorize a conviction. The court did not so charge the jury, i.e., that if the victim was disbelieved on the matter of coercion, the jury would have to acquit the defendant. The trial court did not want the jury to consider the circumstantial evidence as possibly authorizing a conviction because, in its mind, such evidence would be insufficient. Actually, from this perspective, *not* giving the charge would benefit rather than harm defendant because giving it would still leave open the possibility of conviction.

Nevertheless, in its charge on impeachment, the court instructed: "If a witness should be successfully impeached, that is to say, if it should be shown to the satisfaction of the jury that such witness is not worthy of belief, then in that event it would be the duty of the jury to disregard the testimony of such witness, unless the same is corroborated by other credible and unimpeached testimony, either direct or circumstantial." Thus, the jury was authorized by the court to convict defendant on circumstantial evidence.

The pivotal issues of fact were whether the complaining witness was coerced at knifepoint or, on the other hand, consented to leave her apartment and drive defendant in her car and whether she was assaulted with the knife. It would appear that as to these points, as in

*Mayfield v. State*, 153 Ga. App. 459, 461 (3) (265 SE2d 366) (1980), "the state's case is predicated entirely upon the direct evidence offered by [her]. If the jury determines this witness was impeached, then there would be no other evidence authorizing a verdict of guilty." Of course, " '[i]f a witness is impeached or discredited in some legal manner, a jury . . . may disbelieve him altogether.' " *Postell v. State*, 200 Ga. App. 208, 209 (1) (407 SE2d 412) (1991), rev'd on other grounds, 261 Ga. 842 (412 SE2d 831) (1992).

In this case, if the jury did not believe the complaining witness' testimony that defendant had a knife which he used in a threatening manner, there was no circumstantial evidence that he did have one and used it coercively. The circumstantial evidence did not show this but did establish that defendant was in the area looking for a ride home in the middle of the night and, after being rejected by one resident who did not know him, drove off in the victim's car with the victim, who was seen two hours later in her nightclothes, disheveled and distressed.

Although the trial court's assessment, that there must be circumstantial evidence of guilt in the case in order to warrant a charge on circumstantial evidence, would seem to be in line with this court's view in *Postell*, supra, and *Robinson v. State*, 199 Ga. App. 368 (405 SE2d 101) (1991), the Supreme Court has ruled otherwise. The rule now is "that where the state's case depends, in whole or in part, on circumstantial evidence, a charge on the law of circumstantial evidence must be given on request . . . whether or not the jury is authorized to find that the direct evidence presented by witness testimony has been impeached." *Robinson v. State*, 261 Ga. 698, 699 (410 SE2d 116) (1991). See also *Postell*, supra. Even though the trial court considered the circumstantial evidence to be wholly inadequate to support a conviction, nevertheless it was present and thus distinguishes this case from *Mayfield v. State*, 153 Ga. App. 459 (3) (265 SE2d 366) (1980), in which there was *no* circumstantial evidence of the event. The only evidence in *Mayfield* besides the direct evidence from the officer related to the chain of custody and scientific testing of the substance. The court did not consider that to be circumstantial evidence of guilt, presumably because it did not relate to whether the transaction took place and whether it was with the defendant. See *Robinson*.

Thus it was error not to give the requested charge, which tailored the rule in OCGA § 24-4-6 to this case.

2. After beginning deliberations, the jury sent the trial judge a note requesting a written copy of the instructions regarding reasonable doubt and impeaching a witness. Without advising counsel of the request or of the response decided upon, the judge sent this note back to the jury, after writing on the bottom of it: "This is not available to

the jury."

When the jury returned its guilty verdicts, appellant moved for a mistrial on the ground that the trial court had denied the jury's request without informing the defense of the request or the court's action. The motion was denied.

Appellant contends that the trial court erred in communicating with the jury concerning these matters outside the presence of the defense, and that it was error not to recharge the jury on these principles. This contention has merit. See *Collins v. State*, 191 Ga. App. 289 (2) (381 SE2d 430) (1989). Although it has been the accepted Georgia practice not to allow jurors to take written instructions with them into the jury room, *Grimes v. State*, 199 Ga. App. 152, 154 (2) (404 SE2d 324) (1991), the Supreme Court in *Anderson v. State*, 262 Ga. 26, 27 (3) (413 SE2d 732) (1992), recently held that a trial judge is not prohibited from providing the jury with written instructions. However, that case dealt with giving the jury the entire charge in writing, not a selected portion of it. Thus, defendant should have had an opportunity to urge that the jury's request be honored at least by an oral recharge. The jury's clear understanding of the principles regarding impeachment was particularly crucial in this case, because a conviction hinged on the victim's credibility, which was in dispute. As to the standard of reasonable doubt, it is always critical, as a fundamental principle, and the record shows that the jury was uncertain of its meaning. Not only did they ask for it in writing, but later they indicated that they had "considerable doubt, reasonable doubt" as to Count 3 and changed their initial report on that count after the court directed them to deliberate further. See *Collins*, supra; compare *Elliott v. State*, 168 Ga. App. 781, 784 (2) (310 SE2d 758) (1983).

"When the jury requests the court to recharge them on any point, it is the court's duty to do so. [Cits.]" *Edwards v. State*, 233 Ga. 625, 626 (2) (212 SE2d 802) (1975). "It was not only the court's prerogative but its duty to inform the jury on any question of law about which they were confused, when such confusion was apparent to the court, although there was no specific request from the jury for such a charge." *Hyde v. State*, 196 Ga. 475, 491 (8) (26 SE2d 744) (1943).

3. Appellant contends that the trial court erred in not accepting the jury's not guilty verdict on count three (aggravated assault).

After announcing that it had found the defendant guilty on counts one and two, the jury stated that it could not reach a verdict on count three. After observing that the jury had only been deliberating for approximately two hours, and after ascertaining from the jury foreman that the jury felt that it could make progress toward reaching a unanimous verdict on that count, the trial court instructed the jury to deliberate further. If the jury could not then reach a verdict, the trial court stated that it would declare a mistrial. The jury subse-

quently returned a guilty verdict on count three.

Contrary to appellant's contention, the jury never returned a verdict of not guilty on count three. Consequently, this enumeration is therefore without merit.

4. It is not necessary to address the remaining enumerations, which present matters unlikely to recur on retrial.

*Judgment reversed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED JULY 16, 1992 —
RECONSIDERATION DENIED JULY 30, 1992 —

*Megan C. DeVorsey*, for appellant.

*Lewis R. Slaton, District Attorney, Rebecca A. Keel, Benjamin H. Oehlert III, Assistant District Attorneys*, for appellee.