A92A2322. CAMPBELL v. THE STATE.
(429 SE2d 538)

ANDREWS, Judge.

Campbell appeals his conviction of aggravated assault.[1]

Viewed in favor of the jury's verdict, the evidence was that Campbell and his female companion Painter went to the apartment of Askins and Woods where all four consumed alcoholic beverages over a three-hour period. Campbell and Painter argued and Painter cut Campbell on the arm with Campbell's buck knife. Askins and Woods attempted to break up the argument and it did abate, but then flared back up. Campbell hit Painter and Askins asked them to leave the apartment around 11:00 p.m. All four went outside the apartment but Painter said she did not have the keys to her car. Askins went back into the apartment to call Ross, the apartment maintenance and se-

---

[1] Campbell was acquitted of the second count, charging burglary of the apartment of Askins.

curity man. As Askins was calling, Woods came back into the apartment holding his abdomen where he had been stabbed. Woods testified that "we finally got him [Campbell] to leave. I went outside with them, and all of a sudden, he stabbed me."

As Ross was coming toward the apartment, he saw Campbell coming from that direction and he had blood on him. When police arrived, Painter denied knowing Campbell and was arrested for obstructing an officer. Painter had a bruised face and a cut on her knee. She did eventually tell the officer that Campbell had struck her. She did not mention any assault by anyone else present. Woods was taken to the hospital and Ross and Askins went with him. Ross locked the apartment with his pass key.

Askins returned to the apartment about 1:20 a.m. with his brother and father to pick up some clothes, since he was afraid to remain there because Campbell had not been found. When Askins and his brother went upstairs, Campbell was lying on Askins' bed. The brother went back downstairs to get his gun and Campbell went into the bathroom where he removed the lid from the commode and retrieved the knife. Police were called and when they arrived Askins' brother was holding a gun on Campbell who had blue toilet water on his hands. The knife was found in his pocket, also with blue stains on it.

Campbell and Painter testified that Painter felt threatened by Askins and feared being raped. When they were outside looking for the car keys, Askins went back into the apartment to get his gun. At that point, Campbell pulled his knife. He said Woods came at him like he was going to grab him. As he testified, "I pulled my knife out. I couldn't get in my car. . . . Then, [Woods] just dove on top of me. The knife . . . he got stabbed."

Campbell then went to a stranger's apartment and waited. He returned to Askins' apartment looking for Painter. Thinking that he heard her crying inside, he kicked in the door. He said he dropped the knife in the toilet when he was pulling up his pants after using the toilet.

1. The first enumeration alleges error in the court's failure to give curative instructions after Askins made the statement during redirect examination that "[Campbell]'s mean. He's a bad individual."

At trial, defense counsel immediately said "I'm going to object." The court sustained the objection. No motion for mistrial was made nor was there any request for curative instructions.

Prior to this exchange during redirect, on cross-examination, defense counsel questioned Askins about whether Campbell had displayed the knife when Askins found him in his apartment. Askins responded "When Billy Campbell tells you you better get out of his way, to let him go, he means it. He's a serious man. . . . If you're

saying did he pull the knife out and come at me, no, but I knew he had it. . . . You know, he don't need a knife to be. . . ." At that point, defense counsel interrupted and announced that was all.

When the prosecutor asked Askins to explain his interrupted answer, the statement was made, objected to, and the objection sustained.

"[A]ppellant waived any error due to the court's failure to give curative instructions by not requesting curative instructions when the objection was sustained. [Cits.]" *Price v. State*, 204 Ga. App. 288, 289 (1) (419 SE2d 126) (1992).

2. Campbell enumerates as error the court's grant of the State's motion in limine concerning the victim's prior conviction of aggravated assault.

As acknowledged by the argument in Campbell's brief, at the time of this trial in May 1991, such evidence of specific acts of violence by the victim against third persons was not admissible. *Lolley v. State*, 259 Ga. 605, 606 (1) (385 SE2d 285) (1989); *Hill v. State*, 259 Ga. 655, 657 (4) (386 SE2d 133) (1989).[2] There was no error.

3. The third enumeration alleges error in the court's failure to charge on accident when no written request for such a charge was made by Campbell.

Prior to trial, Campbell filed his written requests to charge on self-defense and justification. Charges on both were given by the court. After the charge was given, the court inquired of counsel if there were objections. Counsel for Campbell made only one objection, involving the self-defense charge, addressed infra in Division 5, and did not reserve further objections. " 'The general rule in this state is that defendants in criminal cases are not required to except to the jury charge to preserve error for appeal. If, however, the trial court asks if there are objections to the charge, defense counsel must either state his objections or reserve the right to object on motion for new trial or on appeal. Where objections are requested, the failure to either object or to reserve the right to later object amounts to a procedural default barring appellate review of the charge.' *Rivers v. State*, 250 Ga. 303, 309 (298 SE2d 1) (1982)." (Citations omitted.) *Bryant v. State*, 256 Ga. 273, 274 (1) (347 SE2d 567) (1986). OCGA § 5-5-24 (b).

While it is error for the court to fail to charge without request an accused's *sole* defense, *Benefield v. State*, 204 Ga. App. 87 (418 SE2d 447) (1992), accident was not the sole defense put forward here. Painter, called by Campbell, presented evidence that she was afraid

---

[2] *Chandler v. State*, 261 Ga. 402, 407 (3) (405 SE2d 669) (1991), held that, as of September 12, 1991, evidence of specific acts of violence by the victim against third persons is admissible in cases where the defendant claims justification.

of being raped and that Campbell was defending her. Campbell stated that he thought Askins was going in to get a gun and Woods was to keep him there until he returned. There was no error. Id.[3]

4. Without request, the court gave the pattern charge on circumstantial evidence. Suggested Pattern Jury Instructions, Vol. II, Criminal Cases, p. 11. No objection was made to this charge below nor was any written request made for any additional charge on circumstantial evidence. Here, for the first time, Campbell alleges the court's failure to include in this charge the language of OCGA § 24-4-6 constitutes reversible error.

No such written request having been made below, there was no error. *Postell v. State*, 261 Ga. 842 (1) (412 SE2d 831) (1992); *Robinson v. State*, 261 Ga. 698, 699 (410 SE2d 116) (1991); *Gidden v. State*, 205 Ga. App. 245 (1) (422 SE2d 30) (1992).

5. The fifth enumeration is that the "failure to accurately and fully inform the jury of the charges on justification, self-defense, necessity and no duty to retreat, and failure to give the jury the complete written charges on justification and impeachment as they requested, deprived Campbell of a fair trial and due process, in violation of the 5th and 14th amendments to the U. S. and Ga. Constitutions and Article I, § I, Par. I of the Ga. Constitution."

The only objection made below to either the charge or recharge given by the court was the statement that "we except to the State's requested charge number three in regards to self-defense, *Spradley v. State* matter. [*Spradlin v. State*, 151 Ga. App. 585 (260 SE2d 517) (1979), overruled on other grounds, *Bangs v. State*, 198 Ga. App. 404, 406 (2) (401 SE2d 599) (1991)]. We object that the statutory language of self-defense is more than sufficient for this purpose, and, therefore, that's what we base our objection on."

" 'Our law requires that enumerations "shall set out separately each error relied upon" (OCGA § 5-6-40). . . .' *Murphy v. State*, 195 Ga. App. 878, 880 (6) (395 SE2d 76) [(1990)]. When an appellant argues more than one error within a single enumeration, this court in its discretion may elect to review none of the errors so enumerated in violation of OCGA § 5-6-40 (*Murphy*, supra) or elect to review any one or more of the several assertions of error contained within the single enumeration and treat the remaining [enumerations] as abandoned. (*West v. Nodvin*, 196 Ga. App. 825, 830 (4c) (397 SE2d 567) [(1990)])." *Robinson v. State*, 200 Ga. App. 515, 518 (2b) (408 SE2d 820) (1991).

To the extent that the enumeration can be read to assert the ob-

---

[3] This is also not a situation where an accused makes a timely request for instruction on both accident and self-defense. *Turner v. State*, 262 Ga. 359, 360 (2) (418 SE2d 52) (1992).

jection made below, we consider it.

The instruction taken from *Spradlin* was that "[s]elf-defense, as its nomenclature implies — is defensive in nature and not offensive. Therefore, it is invoked by necessity and without necessity being present it is inapplicable. Thus, the amount of force which can be utilized is based upon necessity and under no circumstances may legitimate self-defense exceed the bounds necessary for its use. Where the force used exceeds that necessary for defense of the person, the law will consider the defendant the aggressor and if his act results in a homicide — the offense is at least manslaughter." *Spradlin*, supra at 586.

"It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. [Cits.]" *Williams v. State*, 249 Ga. 822, 825 (3) (295 SE2d 293) (1982).

Reading the charge as a whole, it did encompass the elements of OCGA § 16-3-21. The court also charged that the State would have the burden of proving that the defendant did not act in self-defense or defense of others and that it would be the jury's duty to acquit the defendant if the State failed to prove its case beyond a reasonable doubt. These instructions, taken as a whole, were sufficient. *Doss v. State*, 262 Ga. 499, 500 (3) (422 SE2d 185) (1992).

6. The sixth enumeration is that the court erred in denying the motion for new trial based on defense counsel's claimed conflict of interest.[4]

Prior to trial, appointed defense counsel informed the court that, after his appointment to represent Campbell, he was appointed to represent Woods, the stabbing victim, on a theft by receiving charge involving a lawnmower. Counsel interviewed Woods concerning that charge without realizing the connection. He announced these facts in Campbell's presence and stated he would use nothing concerning the pending charge against Woods or anything he had learned from his conversation with him.

As acknowledged during the hearing on the motion for new trial, the only conflict raised was a potential one. "When conflict of interest is raised in a post-conviction proceeding, the petitioner must show actual conflict which caused his counsel's performance to be adversely affected." *Wharton v. Thomas*, 256 Ga. 76, 77 (343 SE2d 694) (1986), citing *Jones v. Ivory*, 255 Ga. 20 (334 SE2d 666) (1985).

Campbell had "no right to sit back, await a possibly favorable verdict, and then raise the issue for the first time after trial. *Jones*[,

---

[4] Appellate counsel entered the case at the motion for new trial stage. The written motion raised only the general grounds, but the court considered the grounds raised orally at the hearing and we treat the motion as amended. OCGA § 5-5-40 (b).

supra.]" *Pope v. State*, 256 Ga. 195, 214 (26) (345 SE2d 831) (1986). Here, in fact, there was an acquittal on the burglary charge. There was no error.

7. The seventh enumeration also suffers from the "shotgun" approach condemned in *Robinson v. State*, supra. It complains of numerous evidentiary rulings made by the court. The record reflects, however, that all of these rulings were either not objected to below or were acquiesced in by defense counsel and they present nothing for our review. *White v. State*, 203 Ga. App. 889, 890 (1) (418 SE2d 149) (1992).

8. Campbell asserts that the court erred in its "inquiry and ruling on the state's failure to provide *Brady/Agurs* material," thereby depriving him of a fair trial.

Pursuant to that motion, the trial court did conduct an in camera review of the State's files and found no exculpatory material.

Here and at the motion for new trial, Campbell argued that the victim's hospital records, purportedly showing that the wound was three centimeters long instead of the three inches testified to by witnesses, and the statements of the State's witnesses should have been turned over. There is no showing, either in the trial court or here, as to how any of this evidence is exculpatory of Campbell, and, therefore, no error has been shown. *Bradford v. State*, 205 Ga. App. 383, 384 (422 SE2d 74) (1992).

9. Finally, Campbell alleges error in the denial of his motion for directed verdict. As acknowledged by the argument, however, the only motion for directed verdict was made as to the burglary count on which Campbell was acquitted. Therefore, error, if any, in the denial of the motion was harmless.

10. There being evidence sufficient to convince any rational trier of fact of the existence of the essential elements of the crime of aggravated assault, the judgment is affirmed. *Jackson v. Virginia*, 443 U. S. 307, 310 (99 SC 2781, 61 LE2d 560) (1979); *Baldwin v. State*, 153 Ga. App. 35, 37 (264 SE2d 528) (1980).

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED MARCH 17, 1993.

*Alice C. Stewart*, for appellant.

*Thomas J. Charron, District Attorney, William M. Clark, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys*, for appellee.