A03A1233. BAILEY v. THE STATE.
(588 SE2d 807)

ANDREWS, Presiding Judge.

Marlin Reynaldo Bailey appeals from the denial of his motion for new trial following his conviction by a jury of aggravated assault, contending that the trial court improperly gave a jury instruction on self-defense from *Spradlin v. State*, 151 Ga. App. 585, 586 (1) (260 SE2d 517) (1979), overruled on other grounds, *Bangs v. State*, 198 Ga. App. 404, 406 (2) (401 SE2d 599) (1991).

1. Viewed with all inferences in favor of the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was that, on the evening of October 23, 1999, Phelps (the victim) and his roommate Davenport had a cookout at their Athens residence, including Mango, Jewel, and others. Alcohol was consumed by Phelps, Davenport, Jewel, and Mango during the evening. Following the cookout, Phelps drove Davenport, Jewel, Mango, and another guest to get something to eat, eventually parking behind a Kangaroo Convenience Store. As they were getting out of their car, a

Honda Civic driven by Marable, with Bailey as front seat passenger, drove by and Phelps believed that Bailey said something to him. Davenport said that Bailey was pointing his finger at his group and Phelps asked what Bailey said and why he was pointing. Phelps then approached the passenger side of Marable's car where Bailey sat and words were exchanged. Then, Phelps said that Bailey, still seated in the passenger seat, shoved him and, in response, Phelps hit Bailey in the eye. Bailey said that Phelps hit him with a hard black object, while Phelps said he hit Bailey with his fist.

At this point, Bailey leaned down and picked up a Glock .22 pistol from the floorboard of Marable's car,[1] pointed it out the car window, and fired. Bailey said he was not trying to shoot Phelps, but just trying to get him away and only fired once. All of the other witnesses agreed that they heard numerous shots fired. A bullet entered the right side of Phelps' chest, near his armpit, and lodged near his spine, permanently paralyzing him. Based on the gunpowder pattern on Phelps' shirt, it was the opinion of the Georgia Bureau of Investigation firearms examiner that the shot was a straight shot into Phelps.

Athens-Clarke County Officer Mathis was on duty at around 2:30 a.m. on October 24, 1999, working crowd control and was at the Kangaroo Store when he heard a series of shots coming from behind the store. Mathis went to the rear parking lot where he found Phelps bleeding from his right side, and a hostile crowd of people began gathering. Several people were by Phelps' side, and Mathis summoned an ambulance.

Marable, with Bailey in the car, drove away and took Bailey home. Bailey told Marable that Phelps was "showing out" and it must have been about a girl. Bailey kept the gun with him, because he said he was afraid of the other guys coming to get him.

Police obtained Bailey's name from witnesses and went to his home, where Bailey turned the gun over to them. After being read his *Miranda* rights, Bailey gave a statement in which he said, after being struck by Phelps, "I just snapped. I reached down on the floorboard and got the Glock which belongs to Harry [Marable], and I grabbed it and stuck it out the window and fired several shots, at Phelp[s]. . . . I did not try to hurt him, I just lost control from Phelp[s'] hitting me."

The evidence was legally sufficient. *Jackson v. Virginia*, supra; *Campbell v. State*, 258 Ga. App. 863, 865 (575 SE2d 748) (2002).

---

[1] Marable said there was no weapon in the car prior to Bailey getting in the car, although Bailey said he did not know anything about the gun prior to reaching down and getting it.

2. Bailey argues that the *Spradlin v. State*, supra, language[2] included by the trial court at the State's request as part of the charge on justification (self-defense) was harmful error.

The argument made here regarding this charge, that it misstates the law of self-defense by imposing a requirement of absolute necessity rather than a reasonable belief requirement, was recently considered in *Stewart v. State*, 262 Ga. App. 426 (585 SE2d 622) (2003).

As stated there,

> [t]he contested charge originated, not from the Pattern Jury Instructions, but from this Court's opinion in *Spradlin v. State*, [supra]. That case addressed the issue of whether the defendant, who was charged with voluntary manslaughter in a stabbing death, was entitled to a charge of involuntary manslaughter where he asserted a claim of self-defense. The *Spradlin* opinion held that it was reversible error for the trial court to refuse to give a charge on involuntary manslaughter under the facts of that case. But in *Bangs v. State*, [supra], this Court recognized that the *Spradlin* decision had been overruled by the decisions of the Supreme Court of Georgia in *Pullin v. State*, 257 Ga. 815, 817 (4) (364 SE2d 848) (1988), and *Willis v. State*, 258 Ga. 477-478 (1) (371 SE2d 376) (1988).

*Stewart v. State*, supra at 428 (2).

Recognizing that not every quote from an appellate opinion is appropriate to give in a jury charge and that a charge should only be given where it contains a correct and complete principle of law not included in the general instructions and when it is adjusted to the facts of the case being tried, we concluded that, while the better practice was not to give the charge,

> [n]evertheless, this Court held in *Campbell v. State*, 207 Ga. App. 902, 906 (5) (429 SE2d 538) (1993), that it was not error to charge this language . . . *where the charge as a whole encompassed the elements of self-defense under OCGA*

---

[2] Self-defense as its nomenclature implies is defensive in nature and not offensive. Therefore, it is invoked by necessity and without necessity being present, it is inapplicable. Thus, the amount of force which can be utilized is based upon necessity and under no circumstances may legitimate self-defense exceed the bounds necessary for its use. Where the force used exceeds that necessary for defense of another per – excuse me. Where the force used exceeds that necessary for the defense of the person, the law will consider the defender the aggressor.
From *Spradlin v. State*, supra at 586 (1).

*§ 16-3-21.* "'It is a fundamental rule that jury instructions must be considered as a whole in determining whether the charge contained error.' [Cit.]" *Durham v. State*, 259 Ga. App. 829, 830 (578 SE2d 514) (2003).

(Emphasis supplied.) *Stewart v. State*, supra at 429 (2).

Here, the trial court's instructions on justification, including self-defense, consist of over two pages of transcript before the objected-to portion was given. Included in these instructions was the statutory language of OCGA § 16-3-21 (a) that

[a] person is justified in threatening or using force against another person when, and to the extent, that he *reasonably believes* that such threat or force is necessary to defend himself or a third person against the imminent use of unlawful force. A person is justified in using force which is intended or likely to cause death or [great] bodily harm only if that person *reasonably believes* that such force is necessary to prevent death or [great] bodily injury to himself or a third person or to prevent the commission of a forcible felony.

(Emphasis supplied.)

After the jury had deliberated nearly three hours, the jury requested that the trial court "[p]lease read us the definitions of self-defense and aggravated assault." The trial court then fully recharged the elements of aggravated assault and self-defense, including the *Spradlin* portion, and also that the State had the burden of proving beyond a reasonable doubt that Bailey was not justified.

We conclude that here, as in *Stewart*, supra, the instruction on self-defense, when the charge is read as a whole, did not result in reversible error.

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED OCTOBER 14, 2003 —

*Thomas J. Killeen*, for appellant.

*Kenneth W. Mauldin, District Attorney, Julayaun M. Waters, Assistant District Attorney*, for appellee.