A90A1928. GRIMES v. THE STATE.
(404 SE2d 324)

McMURRAY, Presiding Judge.

Defendant Grimes was charged by indictment with the offense of murder. Upon the trial of the case, a jury returned a verdict of guilty of involuntary manslaughter (in the commission of an unlawful act). Defendant appeals his conviction of involuntary manslaughter (in the commission of an unlawful act). *Held*:

1. Defendant's second enumeration of error raises the sufficiency of the evidence to authorize his conviction for involuntary manslaughter (in the commission of an unlawful act). The evidence construed most strongly in favor of the verdict, is as follows: The victim, defendant's female friend, and defendant were alone at defendant's apartment when the victim was fatally wounded by a single gunshot to her head. Defendant admitted that the shot was fired by his pistol and that he had pulled the trigger causing the pistol to fire.

Relying upon the defense of accident, defendant testified that he was walking across the room to put the pistol away when he tripped and the pistol fired. Defendant conceded that as he fell he put pressure on the trigger causing the pistol to fire. However, defendant's testimony regarding the manner in which the pistol was caused to fire was contradicted by defendant's prior statements.

One of the first two police officers at the scene was told that defendant and the victim were playing on the bed, where the victim was found when police arrived, and that the victim had rolled over on the pistol and it had gone off. When the officer noticed blood on a chair in the adjoining living room and directed defendant's attention to this, defendant stated that he and the victim had been wrestling around the living room and that the pistol had gone off there. The second officer was told by defendant that the pistol discharged when he dropped it on the bed. When the third officer arriving at the scene overheard defendant repeating this version of his story and asked "Did he say it went off when it hit the bed?" defendant responded "Well, it really didn't fall on the bed, it actually hit her in the head and fell on the bed after it went off." In a subsequent statement to a homicide detective, defendant stated that the pistol fired when he tripped over a chair.

At the hospital, where the victim's family had gathered as she lay in a coma from which she never recovered, defendant spoke to the victim's mother and told her that "he slipped over the stereo dropped the gun, the gun went off, . . ." In a separate conversation

with the victim's father, defendant stated that he stumbled, the pistol fell, hit the floor, went off, the bullet ricocheted off the bathroom wall and came back and hit the victim. Defendant told the victim's brother that he tripped over a coffee table and was falling when the pistol went off.

"It is well established that 'the essential elements of the crime of involuntary manslaughter in the commission of an unlawful act are, first, intent to commit the unlawful act; and secondly, the killing of a human being without having so intended but as the *proximate result* of such intended unlawful act,' (Emphasis supplied.) *Passley v. State,* 62 Ga. App. 88, 89 (8 SE2d 131)." *Paulhill v. State,* 229 Ga. 415, 417 (2a), 418 (191 SE2d 842). Defendant contends that there is no evidence showing that he intended to perform any unlawful act not amounting to a felony which was the proximate cause of the victim's death.

We cannot agree. The defendant having admitted firing the pistol, the jury could consider defendant's myriad of conflicting explanations as to the circumstances which precipitated the discharge of the pistol, determine that defendant was successfully impeached, and reject defendant's testimony that the firing of the pistol was not deliberate. The deliberate firing of the pistol in the confines of the apartment could be viewed by the jury as a violation of OCGA § 16-5-60 (b) prohibiting reckless conduct.

As the evidence would authorize a finding that defendant unintentionally killed the victim in the commission of a misdemeanor offense of reckless conduct, a finding of guilt of involuntary manslaughter (in the commission of an unlawful act) was authorized. *Truitt v. State,* 156 Ga. App. 156 (274 SE2d 42). After a review of the entire record, we find that a rational trier of fact could reasonably have found from the evidence adduced at trial proof of defendant's guilt of involuntary manslaughter (in the commission of an unlawful act) beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. After they had retired to deliberate, the jury sent out the following written question: "May we be given a definition of the possible verdicts again and may we write these definitions down?" The trial court then recharged on murder, malice, felony murder, simple assault, aggravated assault, involuntary manslaughter in the commission of an unlawful act, reckless conduct, and involuntary manslaughter in the commission of a lawful act in an unlawful manner. The trial court did not recharge as to the verdict of not guilty or the defense of accident.

Defendant contends that the trial court erred in not including in the recharge a verdict of not guilty and the principle of legal accident upon which defendant relied. "Responding to a jury's request to re-

state portions of the charge is generally required of the trial judge, see *Edwards v. State*, 233 Ga. 625 (2) (212 SE2d 802) (1975), and it is within the court's discretion to recharge only that which is specifically requested. *Williams v. State*, 249 Ga. 6, 9 (287 SE2d 31) (1982)." *Appling v. State*, 256 Ga. 36, 38 (343 SE2d 684). The recharge requested by the jury was for the "definition of the possible verdicts" and thus clearly included the verdict of not guilty. The omission of the verdict of not guilty and the underlying principles which would authorize this verdict was error. *Edwards v. State*, 233 Ga. 625, 626 (2), supra. Compare *Williams v. State*, 249 Ga. 6, 9 (5), supra.

Following a second inquiry from the jury, the trial court elected to respond by having an excerpt from the charge prepared setting forth that portion defining the various offenses of which defendant could be convicted. Over defendant's objection to the procedure, each juror was given a copy of the written excerpt from the charge to take into the jury room. The accepted practice in Georgia (except where required by statute as in OCGA § 17-10-30 (c)) is not to allow jurors to take written instructions with them into the jury room. *Gholston v. Gholston*, 31 Ga. 625, 638 (11); *Planters Warehouse Co. v. McMekin*, 36 Ga. App. 219, 221, 222 (136 SE 104); *Collins v. State*, 191 Ga. App. 289 (2), 291 (381 SE2d 430). Unlike the following cases, defense counsel in the case sub judice objected to the procedure adopted by the trial court. *Woodard v. State*, 91 Ga. App. 374 (2) (85 SE2d 723); *Chattahoochee Brick Co. v. Sullivan*, 86 Ga. 50, 67 (6) (12 SE 216). We conclude that it was error to provide the jury with a written excerpt of the charge to take into the jury room.

3. Defendant's remaining enumerations of error, being unlikely to recur upon a retrial, need not be addressed.

*Judgment reversed. Sognier, C. J., and Carley, J., concur.*

DECIDED MARCH 13, 1991.

*John H. Tarpley*, for appellant.
*Robert E. Wilson, District Attorney, Barbara B. Conroy, Elizabeth G. MacNamara, Assistant District Attorneys*, for appellee.