## A96A0148. MILLER v. THE STATE.
(472 SE2d 697)

BIRDSONG, Presiding Judge.

Ernest Miller appeals from the order denying his motion for new trial and from his conviction of burglary and possession of a knife during the commission of a crime. *Held*:

1. Appellant contends the trial court erred in its recharge to the jury as to the offense of burglary, as the recharge went beyond the definition of burglary and directed the jury as to theories of guilt. We find this enumeration to be without merit.

Following the initial charge to the jury after closing argument, the trial court inquired whether there were any exceptions to the charges; appellant's counsel expressly stated there were no exceptions to these charges and did not reserve any objections on motion for new trial or on appeal. Thus, any error contained within the original charge was waived. *Campbell v. State*, 207 Ga. App. 902, 904 (3) (429 SE2d 538). Subsequently, after commencing deliberation, the jury requested additional instructions as to the Code section about burglary, as to the description of how the law is supposed "to be applied" to that charge, as to what distinguishes a burglary and a criminal trespass, as to what distinguishes the carrying of a knife during the commission of a crime and carrying a concealed weapon, and as to the definition of reasonable doubt. In response, the trial court recharged, inter alia, on the presumption of innocence, the bur-

den of proof, reasonable doubt, and the duty of the jury to acquit if the State failed to prove defendant's guilt beyond a reasonable doubt. These recharges were all favorable to appellant. In addition, the trial court recharged on the elements of burglary, that it was not necessary to show that either a break-in or an actual theft had occurred, that intent to commit theft is an essential element of burglary and must be proved by the State beyond a reasonable doubt, the circumstances under which a jury may in its discretion infer the existence of an intent to steal, the definition of an "entry" into a building, the elements of criminal trespass, the elements of possession of a knife during the commission of a crime, the elements of carrying a concealed weapon, and that carrying a concealed weapon is a lesser included offense of possession of a knife during the commission of a felony. Thereafter, the court instructed the jury that "you need to take the charge of the court as a whole, and these sections are no more or less important than all the other Code sections and law that I charged you on yesterday evening. I don't want you to unduly emphasize these charges over the other charges just because you heard them twice, or just because you heard them more recently than you did the other charges. You need to take this law as a whole and deal with it in that way." Appellant contends on appeal that the trial court went beyond the definition of burglary and directed the jury as to theories of guilt; it was also contended at trial that due to the breadth of the trial court's recharge, it also should have instructed on certain other charges that were "necessary offshoots," such as, that the defendant will not be presumed to have acted with criminal intent, and instructions as to "mere presence" and "grave suspicion."

As a general rule, "[t]he need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court." *Peebles v. State*, 260 Ga. 165, 167 (5) (a) (391 SE2d 639). "When the jury requests a charge or recharge on a particular point, the trial court has discretion to also give or not give additional instructions." *Patterson v. State*, 264 Ga. 593, 594 (449 SE2d 97). After a jury commences to deliberate, the trial court has the inherent authority to call the jury back into the courtroom to give further instructions which may have been omitted for any reason during the initial charging of the jury, and on receiving a request for further instructions from the jury, " ' "to give such reply as the facts may warrant." ' " *Miller v. State*, 195 Ga. App. 89, 91 (3) (392 SE2d 334). "In determining whether the recharge contained error, it is fundamental that we must look at not only the recharge but the original charge as well, as jury instructions must be read and considered as a whole in determining whether the charges contain error." *Taylor v. State*, 195 Ga. App. 314, 315 (1) (393 SE2d 690). " ' "Where a charge as a whole substantially presents issues in such a way as is not likely

to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence." ' " Id. The initial charge contained all the defense instructions which appellant requested be recharged; the record contains no indication that the jury was in need of any further clarification regarding the legal principles which appellant sought to have recharged. Further, the record fails to support any contention that the recharges, as given, would tend to mislead the jury during the course of their deliberation as to appellant's guilt or innocence.

*Grimes v. State*, 199 Ga. App. 152 (2) (404 SE2d 324) is distinguishable from this case, particularly in that the recharge requested in *Grimes* was for the " 'definition of the possible verdicts' " (id. at 154), and the trial court failed to recharge regarding the verdict of not guilty. Also distinguishable is *Brannon v. State*, 163 Ga. App. 340 (2) (295 SE2d 110), where this Court was unable to review the merits of appellant's enumeration because no portion of the charge was provided for appellate review. Moreover there exists no indication in *Grimes*, supra, and *Brannon*, supra, as in this case, that the trial court initially charged the jury in such a manner that no exceptions to the initial charge were taken and no right to except thereto was reserved until motion for new trial or on appeal. Further, in *Grimes*, supra, and *Brannon*, supra, there is no indication that on recharge the trial court expressly instructed the jury, as was done in this case, that the charge of the court must be taken as a whole and to consider as equally important the initial charges previously given.

Examining the charge and recharge in their entirety, we find that the trial court did not err as enumerated.

2. Appellant asserts the trial court erred in sentencing him to pay restitution for his court-appointed attorney fees without conducting a hearing pursuant to OCGA § 17-14-10 to determine his ability to pay. We disagree; the reimbursement of attorney fees is governed by OCGA § 17-12-10, not OCGA § 17-14-10.

Defendant was sentenced to 15 years, to serve 12, with the balance to be served on probation. One of the conditions of probation is that he pay "no more than" $1,000 for court-appointed attorney's services at $50 per month beginning 60 days after his release from custody. He must also pay a monthly probation supervision fee of $20, but that is not contested.

OCGA § 17-14-10 governs the court's authority to require a convicted defendant to make "restitution" to the "victim," as defined in OCGA § 17-14-2 (7) and (9). "Restitution" can be in the form of money, property, or services. A "victim" is one who has suffered "damages caused by an offender's unlawful act." Although the taxpayers who must shoulder the cost of providing counsel to indigent

defendants, or counsel who serves pro bono (see *Sacandy v. Walther*, 262 Ga. 11 (413 SE2d 727)) are victims of the crime in a broad sense, ordinary word usage would not include attorney fees as damages caused by the crime. In addition to the definition of "restitution" given in OCGA § 17-14-2 (7), the Supreme Court has held that it is "punishment when ordered as part of a criminal sentence." *Harris v. State*, 261 Ga. 859, 860 (1) (413 SE2d 439).

OCGA § 17-12-10 is a specific statute relating to attorney fees, and where that appears in the law, the focused provision rather than a general provision governs. *Stovall v. State*, 216 Ga. App. 138, 141 (7) (453 SE2d 110). Although in this case, and in other reported instances, it is ordered as a condition of probation, it is not required as part of the punishment philosophy but rather to restore to government coffers some of the expense incurred for the one whose behavior is responsible for it. Compare the purposes of restitution, as explained by the Supreme Court in *Harris*, supra at 860. The same philosophy of defrayment of necessary expenses is true of the probation fee, which defendant does not challenge. See OCGA § 17-12-2 (5). Payment or reimbursement for legal assistance can also be recovered by civil suit as a debt. OCGA § 17-12-11.

OCGA § 17-12-10 (c), which provides for payment either directly to the attorney or by reimbursement to the governing authority, does not expressly require a hearing but gives the trial court the discretion to order payment or reimbursement "[t]o the extent that [an indigent] person . . . is able to provide for the employment of an attorney." To determine ability, it is obvious that the court would have to inquire and determine such facts as the amount of defendant's income, assets, expenses, and outstanding obligations so as to have some basis for finding ability to pay or reimburse. *Fowler v. State*, 184 Ga. App. 177 (360 SE2d 918); *Owens v. State*, 187 Ga. App. 262, 263 (1) (369 SE2d 919).

But *Owens* did not rule that a "hearing" would be necessary in order for the trial court to have a basis upon which to determine ability to pay. *Holmes v. State*, 205 Ga. App. 168, 170 (421 SE2d 311), cited *Owens* when it vacated the reimbursement portion of Holmes' sentence for ordering it "without first conducting a hearing." By the time of sentencing of an indigent defendant who has had to supply financial data in order to qualify for appointment of counsel and who may have been subject to a presentence investigation, the court may already have enough information to serve as an adequate basis for ordering reimbursement. The court can put this basis into the record. As stated in the special concurrence in *Fonseca v. State*, 212 Ga. App. 463 (441 SE2d 912) (physical precedent only), in a case involving *restitution* under OCGA § 17-14-10, a hearing is not always necessary for the trial court to have sufficient information upon which to make

even the statutorily-required findings for the purpose of ordering restitution.

In *Earl v. State*, 214 Ga. App. 891, 893 (3) (449 SE2d 361) and *Thompson v. State*, 214 Ga. App. 889, 890 (3) (449 SE2d 364), this court erroneously applied OCGA §§ 17-14-8 through 17-14-10 to the requirement that defendant make reimbursement for his attorney fee. The two cases cited in both opinions are *restitution* cases, not attorney fee reimbursement cases. Moreover, *Fonseca*, supra, is not precedential on the point of whether a hearing is necessary. Appellant Miller misguidedly relied on *Thompson* at the hearing on his motion for new trial. To the extent that *Thompson*, supra, and *Earl*, supra, hold that the provisions of OCGA §§ 17-14-8 through 17-14-10 apply to reimbursement for attorney fees, such precedent will no longer be followed.

In this case, prior to sentencing Miller, the court permitted both parties to present evidence and argument, the State in aggravation of punishment and defendant in mitigation. Counsel and defendant both spoke. Counsel then responded to the court's question regarding what the maximum of his fee voucher to the county would be. He stated: "Given it was a jury trial, I'm sure I've exceeded the maximum. I believe the maximum is either a thousand or fifteen hundred." Included in the sentence, and based on counsel's statement and the court's knowledge by observation of the extent of counsel's services, was the attorney's fee or at least a portion of it. The court explained: "During the probated portion of the sentence I want you to repay the county for the cost of your appointed attorney. I want you to pay back no more than one thousand dollars. If [his] voucher is a thousand dollars that's what [you'll] pay back. If [his] voucher is more than that, I'm not going to charge [you] more than that. If it's less than that, then [you'll] pay the amount that's less than whatever amount [he's] tendered in [his] voucher . . . at fifty dollars a month beginning sixty days after [your] release." The sentence document was signed immediately after the court pronounced it.

Thus, the amount to be paid was aired, defendant did not question it, and there is a reasoned basis for it. As to Miller's ability to pay, he has no obligation to pay until beginning 60 days after he is released from custody after serving a 12-year term. Then he must pay at the rate of $50 per month for 20 months of his 36-month probationary period.

At the hearing on the motion for new trial, where the issue of the proper determination of reimbursement was argued, the court stated some of the factors it took into account in determining that Miller was able to pay. In the order denying the motion for new trial, the court recited these and other factors which formed the basis for its finding of ability to pay. These included facts drawn from the trial

itself and from Miller's application for appointment of counsel and certificate of indigency. The court took into account that when Miller was arrested, he was employed (as an auto detailer and as a motel housekeeper and laundry worker) and had enough money for entertainment and alcohol and carried $100. He claimed no dependents, was only $80 in debt, was in good health, and was a high school graduate. The court found no reason to believe his earning capacity would be any less upon release from prison. None of this is challenged as being untrue. This formed a sufficient basis to conclude that defendant was able to pay the costs of his court-appointed attorney, at least to the degree ordered by the court.

Like the defendant in *Penaherrera v. State*, 211 Ga. App. 162, 164 (2) (438 SE2d 661), Miller is not imprisoned for failure to pay and does not in the future, under the terms of the sentence and basis for the requirement, face imprisonment if he is unable to repay the county for the portion of the cost ordered. If he is unable to pay at the time years from now that he is required to do so, he can petition the court for a change in the probated sentence. OCGA § 42-8-34 (g). See *Penaherrera*, supra at 165; *Dean v. Whalen*, 234 Ga. 182 (215 SE2d 7).

Defendant is presumably now in the custody of the State Department of Corrections, not in the jail in the county where convicted. To now hold a hearing with defendant present, on ability to pay $50 per month years from now, not only is not required by law but also would be expensive in time and services and would yield no answer. The court did not err in finding that at the time of sentencing, Miller was *presently* able to make the reasonably-scheduled future payment. There is a statutory remedy if, when the time comes, he has lost that ability.

Although the order of the trial court denying appellant's motion for new trial and amended motion for new trial reveals that the trial court incorrectly concluded that it was bound by the provisions of OCGA § 17-14-10, and attempted to record certain findings of fact pursuant to the requirements of that statute, we will not reverse the correct ruling of a trial court regardless of the reason, if any, given therefor. See *Krebsbach v. State*, 209 Ga. App. 474 (1) (433 SE2d 649).

*Judgment affirmed. Beasley, C. J., McMurray, P. J., Pope, P. J., Andrews, Johnson, Blackburn, Smith and Ruffin, JJ., concur.*

DECIDED JUNE 17, 1996.

*Mitchell D. Durham*, for appellant.
*Thomas J. Charron*, District Attorney, *Debra H. Bernes, Joan V.*

*Bloom, Nancy I. Jordan, Assistant District Attorneys*, for appellee.