### A96A2216. REID v. THE STATE.
(481 SE2d 259)

BEASLEY, Judge.

Reid was charged with two counts of simple battery (OCGA § 16-5-23 (a) (1), (2)) and one count of criminal trespass (OCGA § 16-7-21 (b) (3)). He was found guilty only of the trespass charge.

1. He first contends the evidence was not sufficient to support the conviction under the standard set forth in *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The evidence is viewed with all reasonable inferences made, and all issues of weight and credibility resolved, in favor of the verdict. Id.; *Patterson v. State,* 181 Ga. App. 68, 69 (2) (351 SE2d 503) (1986). As charged here, criminal trespass is committed when a person "knowingly and without authority . . . [r]emains upon the land or premises of another person . . . after receiving notice from the owner, rightful occupant, or, upon proper identification, an authorized representative of the owner . . . to depart." OCGA § 16-7-21 (b) (3).

Caputi, a hospital security guard, testified he was called to the pediatrics ward and advised by a nurse that Reid was causing a disturbance. Caputi also spoke with a woman who identified herself as the mother of a child who was hospitalized in the room where Reid was. Caputi entered the room, identified himself, and told Reid he would have to leave the room because he was causing a disturbance. Reid, who was on the telephone, responded that he would not do so and that the child was his. Caputi called for police on a two-way radio and then disconnected the telephone. Reid started out the door and turned toward the elevators. Before he got there, he turned again and began to walk in the direction of the nurses' station where the child's mother was standing. Caputi stepped in front of him, Reid struck Caputi on the chest, and Caputi placed him in handcuffs. Caputi did not see Reid's action in the child's room but acted upon what he had been told by the nurse and the patient's mother. It was his duty to tell troublesome persons to leave the premises.

Reid testified that he had taken his son to the hospital and that any disturbance was created by his common law wife, the patient's

mother, with whom he did not get along. Although his testimony differed somewhat from Caputi's, Reid admitted that Caputi entered the room and told him to leave. Reid said he asked for a clarification of the disturbance and an explanation of why he had to leave, but Caputi gave none. He also testified that when he left the room, he saw his wife at the nurses' station and changed direction to return to the room when Caputi grabbed him and threw him against the wall.

Reid contends the evidence was insufficient because Caputi physically blocked his exit from the hospital, solely because Caputi assumed Reid wished to confront his wife. But Caputi testified he told Reid to leave the room in which he was on the telephone but he refused. This alone was sufficient evidence of criminal trespass. The statute requires that a person advised to leave must do so within a reasonable time in the circumstances, which is a question for the factfinder. See *Sizemore Security Intl. v. Lee*, 161 Ga. App. 332, 334 (1) (287 SE2d 782) (1982). Second, there is no evidence that Caputi blocked his exit from the hospital. Caputi testified he blocked Reid when he changed course from the elevators toward where his wife was standing, that he feared Reid would make contact with her, and that there were no elevators in that direction. Reid testified he had changed course so as to return to the room from which he had been ordered to leave, not that Caputi blocked him from going to the elevators. See *Johnson v. State*, 172 Ga. App. 333, 334-335 (2) (323 SE2d 255) (1984).

Reid also argues his testimony shows he was the one who brought his son to the hospital and he did not think it fair he was ordered to leave when his wife caused the problem. Caputi testified that whether Reid brought the child to the hospital would not be a factor in determining whether he would be asked to leave after causing a disturbance. Nor does Reid suggest how that fact would privilege him to remain after notice. As recounted above, evidence contradicts Reid's contention that he was willingly leaving the hospital. The differing versions of events only presented a conflict for the jury's resolution. *Cantrell v. State*, 210 Ga. App. 218, 219-220 (1) (435 SE2d 737) (1993). The evidence was sufficient to support the verdict, and the conviction itself is affirmed. *Jackson v. Virginia*, supra; *Jacobs v. State*, 207 Ga. App. 714, 716 (3) (429 SE2d 256) (1993).

2. Reid challenges the legality of the court's imposition of "50 hours of community service to reimburse Clarke County for the reasonable value of your attorney services that you've received in this case, which is through the public defender's office."

OCGA § 17-12-10 (c) allows the court to order an indigent defendant who has received appointed counsel to provide reimbursement for the employment of his attorney and other costs "[t]o the extent that [he] is able." Reid contends the court could not require

reimbursement without any determination that he was able to pay.

The court did not conduct a hearing to determine whether and to what extent Reid was able to pay. "OCGA § 17-12-10 (c) . . . does not expressly require a hearing but gives the trial court the discretion to order payment or reimbursement 'to the extent that (an indigent) person . . . is able to provide for the employment of an attorney.' To determine ability, it is obvious that the court would have to inquire and determine such facts as the amount of defendant's income, assets, expenses, and outstanding obligations so as to have some basis for finding ability to pay or reimburse. [Cits.]" *Miller v. State*, 221 Ga. App. 718, 721 (2) (472 SE2d 697) (1996). "By the time of sentencing of an indigent defendant who has had to supply financial data in order to qualify for appointment of counsel and who may have been subject to a presentence investigation, the court may already have enough information to serve as an adequate basis for ordering reimbursement. The court can put this basis into the record." Id.

No such basis was recorded. The court only inquired whether Reid worked, how often, and at what rate of pay. This occurred immediately after the imposition of community service to enable the court to schedule payments for the $250 fine and surcharges which were part of the sentence. Reid was also sentenced to 12 months probation. As a basis for requiring reimbursement, it was incomplete because there was no attempt to "determine such facts as the amount of defendant's income, assets, expenses, and outstanding obligations." Id.

This is not a case in which we can determine that the court had access to financial data about Reid to the extent necessary to make the required determination, even if it had placed its reasons into the record. Compare *Miller*, supra; *Penaherrera v. State*, 211 Ga. App. 162, 165 (2) (438 SE2d 661) (1993). No pretrial affidavit of indigence or application for indigent status appears, and there was no testimony or discussion of Reid's assets or obligations prior to the sentence pronouncement. Neither did the court inquire into the reasonable value of the attorney services. Compare *Miller*, supra at 722.

Reid does not challenge the authority of the court to order community service as a form of "payment or restitution" under the statute, so we do not address that issue.

Although the court sentenced Reid to reimburse the county by performing service, not paying funds, the sentence still transfers value from Reid to the county to repay the county for value already received. In the related, but separate, area of victim restitution, see *Miller*, supra at 720-723, the statute specifically defines "restitution" to include services when the victim is a governmental agency. OCGA § 17-14-2 (7). The fact that reimbursement has been ordered in the form of service does not affect the Code section's prerequisite that

reimbursement be ordered only when the defendant has the *financial* ability to "provide for the employment of an attorney." OCGA § 17-12-10; see *Penaherrera*, supra at 165 (2).

The State contends this enumeration has been waived by Reid's failure to object to the sentence at the time it was rendered. See *McBride v. State*, 213 Ga. App. 857, 858 (3) (c) (446 SE2d 193) (1994). But the State does not cite any case holding that the absence of the necessary finding is waived by failure to object to the procedure. Nor have we previously treated the failure as a bar to an enumeration based upon noncompliance with OCGA § 17-12-10 (c). See *Miller*, supra at 722, in which we addressed the enumeration despite the fact that at sentencing "the amount to be paid was aired, [and] defendant did not question it." The omission of a prior inquiry and findings required by OCGA § 17-12-10 (c) is akin to the requirement of OCGA § 17-10-2 (a) that a presentencing hearing be held prior to pronouncing a felony sentence. Here, as there, the absence of investigation is neither harmless nor waived by failure to object. *Jefferson v. State*, 205 Ga. App. 687 (2) (423 SE2d 425) (1992).

As there was no record basis for the trial court to determine that Reid was "able to provide for the employment of an attorney," that portion of the sentence which required community service must be vacated and the case remanded for resentencing in this regard, consistent with the statute and case law. See *Owens v. State*, 187 Ga. App. 262, 263 (2) (369 SE2d 919) (1988).

*Judgment affirmed in part and vacated in part and remanded. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 7, 1997.

*Deborah N. Bedsole, John W. Donnelly*, for appellant.
*Kenneth W. Mauldin, Solicitor, Ethelyn N. Simpson, Assistant Solicitor*, for appellee.