A01A2435. BUCHANAN v. THE STATE.
(562 SE2d 216)

PHIPPS, Judge.

Michael Whitney Buchanan was convicted of armed robbery, possession of a firearm during the commission of a felony, and theft by receiving stolen property (motor vehicle).[1] On appeal, he contends that the evidence was insufficient to support the verdict, that the trial court improperly advised the jury that his co-indictee had pled guilty to some of the same charges he was facing, that the trial court erred in refusing to reopen the evidence, that the trial court improperly emphasized a jury instruction on recharge, and that he was denied effective assistance of counsel. We reverse Buchanan's conviction for theft by receiving stolen property because there was not sufficient evidence to support that conviction. But we affirm his convictions for armed robbery and possession of a firearm during the commission of a felony.

1. Buchanan contends that the evidence was insufficient to support the verdict. On appeal, we do not weigh the evidence or assess the credibility of witnesses but only determine whether the evidence, viewed in a light most favorable to the verdict, was legally sufficient under the standard of *Jackson v. Virginia*.[2]

Viewed in this light, the evidence showed that at approximately 10:00 p.m. on October 13, 1996, two masked men entered a McDonald's restaurant and demanded money at gunpoint. One man was wearing all dark clothing, and the other was wearing a patterned shirt and jeans. After taking money from the safe and registers, the robbers headed to the parking lot as the police were arriving at the scene. The robbers ran to a parked Firebird automobile, but were unable to open the car door. They dropped the gun and the money and then ran into a wooded area behind the restaurant. Police,

[1] The trial court directed a not guilty verdict on a fourth charge of theft by taking (motor vehicle).

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *McKay v. State*, 251 Ga. App. 115, 116 (553 SE2d 672) (2001).

including a K-9 unit, gave chase. The robbers began shedding their masks and articles of clothing. The police dog led officers to a creek, where Leondo Jones was found hiding. Near the creek, officers found a white athletic sock with "Mike Buchanan" written on it, a black sweatshirt that was consistent with an eyewitness's description of what one of the robbers wore, and a black t-shirt with a white t-shirt inside it. The police dog then led officers to Buchanan, who was hiding in the crawl space of a house and wearing only boxer shorts. Police recovered a pair of jeans from the crawl space.

Back at McDonald's, police recovered the gun and a bag of money. In the parking lot, police found a second white athletic sock with the words "Mike Buchanan" written on it. They also discovered an unoccupied, stolen Bonneville automobile parked there with the engine running. The driver's door lock had been damaged, and the steering column had a hole in it that exposed the ignition. Inside the car were several items of clothing, including a shirt that Buchanan claimed as his own. He also admitted that he had worn the shirt earlier on the day of the robbery.

Buchanan challenges the sufficiency of the evidence by pointing to what he claims are inconsistencies and weaknesses in the evidence. But conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve.[3] As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we will uphold the jury's verdict.[4] We find that the evidence here was sufficient to authorize the jury's verdict of guilty for the charges of armed robbery and possession of a firearm during the commission of a felony.[5]

We do not, however, find sufficient evidence to sustain the conviction for theft by receiving the stolen Bonneville. A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property that he knew or should have known was stolen.[6] " 'Receiving' means acquiring possession or control . . . of the property,"[7] that is, that the person had "the right to exercise power over a corporeal thing, or there exists some evidence, either direct or circumstantial, that the accused was a party to the crime by aiding and abetting its commission."[8] Here there is no evidence that Buchanan possessed or controlled the stolen car.

---

[3] *McKay,* supra.

[4] Id. at 116-117.

[5] See *Toney v. State,* 253 Ga. App. 231, 234 (2) (558 SE2d 780) (2002); *Hayes v. State,* 249 Ga. App. 857, 859-860 (1) (549 SE2d 813) (2001); *Howze v. State,* 201 Ga. App. 96, 97-98 (410 SE2d 323) (1991).

[6] OCGA § 16-8-7 (a); see also *Harris v. State,* 247 Ga. App. 41, 42 (543 SE2d 75) (2000).

[7] OCGA § 16-8-7 (a); *Harris,* supra.

[8] (Citations omitted.) *Harris,* supra.

The evidence shows that after the armed robbery, Buchanan and Jones ran to the parking lot where the stolen car was parked, unoccupied, with the engine running, and with Buchanan's shirt inside. While this may show that Buchanan had some recent contact with the stolen car, "[m]ere proximity to stolen property is insufficient to establish possession or control. [Cit.]"[9] The lack of evidence that Buchanan ever possessed or controlled the stolen car or affirmatively acted as a party to the crime requires that his conviction of theft by receiving a motor vehicle be reversed.[10]

2. Buchanan contends that the trial court erred by advising the jury that his co-indictee, Jones, had pled guilty to armed robbery, possession of a firearm during the commission of a felony, and theft by taking the Bonneville. However, in a pretrial conference, Buchanan's attorney requested the trial court to inform the jury of Jones's guilty plea after opening statements and to direct them to consider only the guilt or innocence of Buchanan. Buchanan's attorney further stated that she "was planning to mention it" in her opening statement. The trial court thereafter informed the jury of Jones's pleas of guilty, although it did not instruct the jury to limit their consideration to Buchanan's guilt or innocence. But when the trial court asked the prosecutor and defense counsel whether any other instruction was necessary, both replied that it was not.

"A defendant will not be allowed to induce an asserted error, sit silently hoping for acquittal, and obtain a new trial when that tactic fails. Induced error is impermissible and furnishes no ground for reversal."[11]

3. Buchanan contends that the trial court erred by giving a recharge that placed too much emphasis on "party to a crime" and that the court instead should have recharged the jury on the entire original charge. During deliberations, the jury sent out the question, "Do we have to know for sure that he *held* the weapon to find him guilty of armed robbery and possession of firearm or is he guilty by being party to a crime in which a weapon is used?"[12] The jury also asked, "Do we have to know for sure he *was in the car* to find him guilty of theft by receiving stolen property or is he guilty by being party to a crime that was committed with the intent to use stolen property?"[13] After conferring with defense counsel and the prosecutor, the trial court recharged on parties to a crime and theft by

---

[9] *In the Interest of C. W.*, 226 Ga. App. 30, 31 (485 SE2d 561) (1997).

[10] *Harris*, supra at 42-43, and cases cited therein; *In the Interest of C. W.*, supra at 31-32, and cases cited therein.

[11] (Citations, punctuation and footnote omitted.) *Brison v. State*, 248 Ga. App. 168, 169 (3) (545 SE2d 345) (2001).

[12] (Emphasis in original.)

[13] (Emphasis in original.)

receiving and then instructed the jury to consider the charge as a whole and to consider as equally important the initial charge.

Generally, the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court.[14] And when the jury requests a recharge on a particular question, the trial court has discretion in whether to give additional instructions.[15] In considering whether the recharge was in error, we examine not only the recharge but also the original charge, and where the charge as a whole substantially presented issues in a way not likely to confuse the jury, we will not disturb a verdict authorized by the evidence.[16] Examining the charge and recharge in their entirety and in light of our reversal of Buchanan's conviction for the offense of theft by receiving stolen property, we find no reversible error.[17]

4. Buchanan contends that the trial court abused its discretion by refusing to reopen the evidence. Whether to reopen the evidence is a matter resting within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion.[18] We consider the totality of the circumstances in determining whether there has been an abuse of discretion.[19]

After the charge conference, the State moved to prohibit defense counsel from displaying during closing argument a shirt which had not been introduced into evidence. Defense counsel then asked to reopen the evidence to tender the shirt. The court noted that the shirt displayed the words "The Hardy Family Reunion," which had not been described to the jury, and defense counsel conceded that she knew of no significance to the shirt's wording. The court denied defense counsel's motion to reopen the evidence, but instructed defense counsel that she was not prohibited from commenting on any testimony regarding the shirt. Considering all the circumstances, we conclude that the trial court did not abuse its discretion in declining to reopen the evidence.

5. Buchanan's contention that he received ineffective assistance of trial counsel is procedurally barred. Buchanan's trial counsel initially served as his post-trial counsel and filed a motion for new trial, which did not include an ineffectiveness claim. She later requested to withdraw so that Buchanan could pursue a claim of ineffectiveness. Buchanan's new post-trial counsel was appointed on November 2, 2000, but did not file an amended motion for new trial raising the

---

[14] *Miller v. State*, 221 Ga. App. 718, 719 (1) (472 SE2d 697) (1996).

[15] Id.

[16] Id. at 719-720.

[17] See *Igidi v. State*, 251 Ga. App. 581, 586-587 (5) (554 SE2d 773) (2001); *Cloyd v. State*, 237 Ga. App. 608, 610 (3) (516 SE2d 103) (1999); see *Miller*, supra at 718-720 (1).

[18] *Peeples v. State*, 234 Ga. App. 454, 458 (5) (507 SE2d 197) (1998).

[19] Id.

issue of ineffective assistance of trial counsel. On July 2, 2001, Buchanan's motion for new trial was heard and denied. The record does not contain a transcript of the hearing on the motion for new trial, and therefore, appellate counsel has failed to perfect the record on whether the ineffectiveness issue was raised.[20]

An ineffectiveness claim must be raised at the earliest practicable moment.[21] There is no indication that this was done here. Appellate counsel had ample opportunity to amend the motion for new trial to add a claim of ineffective assistance of trial counsel before the ruling of the trial court on the motion precluded such amendment. Consequently, this claim of error was waived.[22]

*Judgment affirmed in part and reversed in part. Smith, P. J., and Barnes, J., concur.*

DECIDED MARCH 13, 2002.

*Robert R. McNeill*, for appellant.
*Daniel J. Porter, District Attorney, John S. Melvin, Assistant District Attorney*, for appellee.

---

[20] See *Landers v. State*, 236 Ga. App. 368, 370 (3) (511 SE2d 889) (1999).
[21] Id.
[22] See id.