## A11A1208. HARRELSON v. THE STATE.

(719 SE2d 569)

Phipps, Presiding Judge.

Charles Harrelson, William Poss, and Stephanie Harrelson were jointly indicted for hijacking a motor vehicle and related offenses.[1] Poss and Stephanie Harrelson pled guilty and gave testimony implicating Charles Harrelson (the appellant, hereinafter "Harrelson") in the commission of the crimes. A jury found Harrelson guilty of hijacking a motor vehicle (Count 1), armed robbery (Count 2), aggravated assault (Count 3), and possession of a knife during the commission of a crime (Count 4). Harrelson appeals, contending that the trial court erred in: (1) denying a motion for a directed verdict because the evidence was insufficient to authorize the convictions; (2) failing to grant a new trial because the prosecutor improperly commented in closing argument on his right to silence after arrest; (3) denying his motion in limine to exclude alleged character evidence; and (4) recharging the jury on the law of conspiracy absent a request to do so. For the reasons that follow, we affirm.

1. Harrelson contends the trial court erred in denying his motion for a directed verdict of acquittal because the evidence was insufficient to support the convictions. He asserts that he was merely present during the crimes, did not participate in the planning of the armed robbery, did not possess the knife during the robbery, did not touch the victim or his wallet, and did not speak to the victim. We disagree because the evidence was sufficient to support Harrelson's convictions under the theories of conspiracy and parties to a crime, on which the jury was instructed.[2]

> A motion for a directed verdict should be granted only when there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law. The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction: the evidence must be sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. The evidence must be viewed in the

---

[1] In addition to the hijacking a motor vehicle charge, Stephanie Harrelson was indicted for theft by receiving stolen property (Count 5). Stephanie Harrelson pled guilty to only the charge of theft by receiving stolen property. In addition to the hijacking a motor vehicle charge, like Harrelson, William Poss was indicted for armed robbery, aggravated assault, and possession of a knife during the commission of a crime. The record on appeal does not reflect to which charges Poss pled guilty.

[2] *Johnson v. State*, 299 Ga. App. 706, 707 (1) (a) (683 SE2d 659) (2009).

light most favorable to support the verdict and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine the credibility of witnesses.[3]

Viewed in the light most favorable to the verdict, the evidence shows that during the weekend of July 4, 2005, Harrelson, Poss, and Stephanie Harrelson stayed together at various motels. Stephanie Harrelson was Poss's girlfriend and Harrelson's sister.

Harrelson did not have steady employment or a vehicle. Neither did Poss or Stephanie Harrelson. By Harrelson's own testimony, they all spoke that weekend about "a hundred different" ways to get money, some of which included Stephanie Harrelson picking up someone at a bar and taking him back to their motel room to be mugged, robbing liquor stores or gas stations, or snatching someone's purse. According to Poss and Stephanie Harrelson, they also discussed stealing a car or robbing a bank. While discussing the various ways of getting money, Poss remarked that he thought Harrelson was joking. When Stephanie Harrelson remarked that she thought Harrelson was serious, Harrelson said, "[Y]ou're damn right I'm being serious." At some point during the weekend, Harrelson and Poss were informed that warrants were outstanding for their arrests.

The motel at which Harrelson, Poss, and Stephanie Harrelson stayed on July 5, 2005 was within a short walking distance of a grocery store. Harrelson and Poss walked from the motel to the store, and back to the motel, three to four times within a thirty-minute period.

The victim testified that he drove to the store and parked his vehicle. As he walked to the store entrance, he saw two men standing near the store, staring at him. After he made his purchases inside, he exited the store. As he walked to his vehicle, he "had a funny feeling," turned around, and saw the men following him. When the victim got into his vehicle, one of the men asked him whether he could give them a ride, to which the victim replied, "[n]o."

The victim testified that the two men continued to walk past his vehicle, but then the same man who had asked for a ride turned around as though "he wanted to fight or something." The victim, who exited his vehicle, testified that "then [the man] came at me with a knife real quick and got me right in my door . . . and I couldn't go anywhere." The man held the knife to the victim's stomach and

[3] *Walker v. State*, 310 Ga. App. 223 (1) (713 SE2d 413) (2011) (citation omitted).

ordered the victim to give him his wallet (which had money in it) and keys. The victim complied and then walked to the front of the vehicle. The man with the knife got into the driver's seat and the other man, who had stood approximately five feet in front of the vehicle during the incident, entered the front passenger side of the vehicle, which was driven away. The victim called the police. The victim made an in-court identification of Harrelson as the man who had gotten into the passenger seat, and Harrelson's trial counsel stipulated that Harrelson had been "present at the time all this happened."

Harrelson testified that he stood approximately 15 feet away from the car, and that he got into the car because Poss (who was already seated in the vehicle) pointed a knife at him and told him to get in. Contrary to Harrelson's assertions, however, Poss testified that he did not threaten Harrelson with a knife to make him get in the vehicle. Harrelson testified that the knife, which had a $3^1/_2$ to 4 inch long blade, was his, but that a few days prior to the crimes he had loaned the knife to Poss.

Harrelson and Poss drove to the motel to pick up Stephanie Harrelson; there, Harrelson told her, "come on, let's go." They then started driving to Florida. A police car got behind them, and a high-speed car chase and then a foot chase ensued, resulting in the apprehension of the three defendants. According to Stephanie Harrelson, during the car chase, Poss wanted to turn himself in, but Harrelson did not.

Although Harrelson denied that he ever handled the victim's wallet, the wallet was recovered at the location where the car came to rest, on the ground to the rear of the vehicle, on the front passenger side (where Harrelson had sat); Poss testified that the last time he touched the wallet was when he had placed it on the center console of the vehicle.

On cross-examination, Harrelson testified, "I knew that what I had did when I got in the car was wrong."

(a) *Hijacking a motor vehicle.* Harrelson was indicted for hijacking a motor vehicle in that he did "unlawfully conspire to obtain a motor vehicle . . . from the person and presence of [the victim] by force, violence, and intimidation, and did intentionally aid and abet . . . in the commission of said crime . . . ."

A person commits the offense of hijacking a motor vehicle when "such person while in possession of a . . . weapon obtains a motor vehicle from the person or presence of another by force and violence or intimidation or attempts or conspires to do so."[4]

---

[4] OCGA § 16-5-44.1 (b).

The plain terms of OCGA § 16-5-44.1 (b) and the indictment specify conspiracy as a method of committing the crime of hijacking a motor vehicle.[5] Under Georgia law, a defendant is culpable for the consequences of his co-defendant's acts under the theory of conspiracy if he "together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy."[6]

A conspiracy may be shown by proof of an agreement between two or more persons to commit a crime, and the existence of the conspiracy agreement may be established by direct proof, or by inference, as a deduction from acts and conduct, which discloses a common design on their part to act together for the accomplishment of the unlawful purpose.[7]

[W]hen individuals associate themselves in an unlawful enterprise, any act done in pursuance of the conspiracy by one of the conspirators is in legal contemplation the act of all, subject to the qualification that each is responsible for the acts of the others only so far as such acts are naturally or necessarily done pursuant to or in furtherance of the conspiracy.[8]

The trial court instructed the jury on conspiracy, which, to a certain extent, mirrors the concept of parties to a crime.[9] Likewise, the trial court instructed the jury on parties to a crime.

A defendant is a party to a crime "if he intentionally aids or abets the commission of the crime, or advises, encourages, hires, counsels, or procures another to commit it."[10] Under OCGA § 16-2-20, "as parties to a crime, participants may be convicted of a crime even though they are not the actual perpetrator."[11] In *Cargill v. State*,[12] the Court held that in a two-defendant murder case, it mattered not whether it was appellant or his accomplice who actually fired a gun during the robbery which resulted in the victim's death. The act of one was the act of the other in the commission of

---

[5] *Johnson*, supra.

[6] Id. at 707-708 (1) (a) (citation and punctuation omitted).

[7] *Darville v. State*, 289 Ga. 698, 699 (2) (715 SE2d 110) (2011).

[8] *Short v. State*, 234 Ga. App. 633, 635 (1) (a) (507 SE2d 514) (1998) (citations omitted).

[9] See *Grant v. State*, 198 Ga. App. 357, 358-359 (1) (b) (401 SE2d 761) (1991) (parties to crime theory "embodies the theory of conspiracy insofar as it renders one not directly involved in the commission of a crime responsible as a party thereto").

[10] *Johnson*, supra at 708 (1) (a) (citation and punctuation omitted); OCGA § 16-2-20 (b).

[11] *Cargill v. State*, 256 Ga. 252, 253 (1) (347 SE2d 559) (1986) (citation omitted) (overruled on other grounds in *Manzano v. State*, 282 Ga. 557 (651 SE2d 661) (2007)).

[12] Id.

the underlying offense and the ensuing death which resulted there-from.[13]

"Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime."[14] Where a defendant, inter alia, stood "directly in front of [the vehicle that was the object of the crimes] at the time of the attempted hijacking, watching, looking around, and talking,"[15] the defendant's conviction for criminal attempt to hijack a motor vehicle was upheld because a rational trier of fact could infer that he was serving as a lookout and was attempting to block the vehicle from exiting the parking lot. In *Lunz v. State*,[16] the defendants claimed they had no prior knowledge of a co-defendant's plan to rob a store, and thought the co-defendant was "joking" when he spoke of robbing a store. However, when the victim was shot, all three defendants were standing together and the victim "heard no one tell [co-defendant] not to do it or protest that 'it wasn't right.' "[17] Their convictions were upheld because their "presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred," and were sufficient for a rational trier of fact to find them guilty as parties to each offense charged beyond a reasonable doubt.[18] Whether Harrelson was a party to the crime because he aided or abetted Poss in the hijacking of the motor vehicle, armed robbery, aggravated assault, and possession of a knife during the commission of a crime or intentionally advised, encouraged, or counseled Poss to commit the crimes was a question for the jury.[19]

In this case, there was ample evidence from which a jury could have concluded that Harrelson was more than "merely present"

---

[13] Id.

[14] *Johnson*, supra at 708 (1) (a) (citation and punctuation omitted); *Buruca v. State*, 278 Ga. App. 650, 652 (1) (629 SE2d 438) (2006) (citation and footnote omitted).

[15] *In the Interest of C. L.*, 289 Ga. App. 377, 380-381 (1) (b) (657 SE2d 301) (2008) (punctuation omitted).

[16] 174 Ga. App. 893, 895 (1) (332 SE2d 37) (1985) (citation omitted).

[17] Id.; see *Williams v. State*, 236 Ga. App. 790, 791 (513 SE2d 757) (1999) (conviction for hijacking a motor vehicle and kidnapping affirmed where defendant claimed he was unaware of any plan to hijack a particular vehicle, yet as the vehicle was being hijacked, defendant never asked to get out of the car and never offered the victim any help, and drove the vehicle during the month following the hijacking); *Johnson*, supra at 709 (1) (a) (defendant may be convicted of hijacking a motor vehicle even if he had no knowledge that co-defendant was planning to use a gun to perpetrate the crime because co-defendant's use of the gun was naturally or necessarily done in furtherance of the conspiracy to steal a vehicle even though not part of the original agreement).

[18] Id.

[19] *Williams*, supra at 792.

when Poss committed the offense of hijacking a motor vehicle by his conduct before, during, and after the criminal acts. The jury was authorized to find Harrelson guilty beyond a reasonable doubt of hijacking a motor vehicle, based on his involvement as a party to the crime or as a co-conspirator.[20]

(b) *Armed robbery.* Harrelson was indicted for armed robbery for allegedly taking money from the victim by use of a knife.

A person commits the offense of armed robbery "when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon. . . ."[21]

The victim's testimony that Poss held a knife to his stomach while demanding the victim's wallet (which contained money) sufficed to prove the commission of an armed robbery.[22] In light of our holding in Division 1 (a), we conclude that the jury was authorized to find Harrelson guilty beyond a reasonable doubt of armed robbery based on his involvement as a party to the crime or as a co-conspirator.[23]

(c) *Aggravated assault.* Harrelson was indicted for aggravated assault for allegedly assaulting the victim with a knife, a deadly weapon.

A person may commit the offense of aggravated assault by assaulting another person "[w]ith a deadly weapon."[24]

The victim's testimony that Poss held a knife against his stomach while he demanded the victim's wallet and keys to the vehicle sufficed to prove the commission of an aggravated assault.[25] In light of our holding in Division 1 (a), we conclude that the jury was authorized to find Harrelson guilty beyond a reasonable doubt of aggravated assault based on his involvement as a party to the crime or as a co-conspirator.[26]

(d) *Possession of a knife during the commission of a crime.* Harrelson was indicted for possession of a knife during the commission of a crime (a felony) for allegedly having "on and within arm's reach of his person, a knife having a blade three (3) inches and more in length . . . during the commission of Hijacking a Motor Vehicle, Armed Robbery, and Aggravated Assault. . . ."

---

[20] *Johnson,* supra; *Williams,* supra.

[21] OCGA § 16-8-41.

[22] *Johnson,* supra at 710 (1) (b).

[23] *Johnson,* supra; see *Williams v. State,* 276 Ga. 384, 386 (4) (578 SE2d 858) (2003).

[24] OCGA § 16-5-21 (a) (2).

[25] *Johnson,* supra.

[26] *Johnson,* supra; see *Smith v. State,* 258 Ga. 181, 183 (3) (366 SE2d 763) (1988).

OCGA § 16-11-106 (b), in pertinent part, provides:

> Any person who shall have on or within arm's reach of his or her person a . . . knife having a blade of three or more inches in length during the commission of, or attempt to commit: (1) [a]ny crime against or involving the person of another; (2) [t]he unlawful entry into a building or vehicle; (3) [a] theft . . . of a vehicle . . . and which crime is a felony, . . .

commits the felony offense of possession of a knife during the commission of a felony.

Given our disposition of Division 1 (a), the jury was authorized to find beyond a reasonable doubt that Harrelson was guilty of possession of a knife during the commission of a crime as a party to the crime or co-conspirator, for which the underlying offenses were hijacking a motor vehicle, armed robbery, and aggravated assault.[27]

2. Harrelson contends the trial court erroneously denied his motion for a new trial because in closing argument, the prosecutor improperly commented on his post-arrest right to silence. Georgia law prohibits the state from commenting on a criminal defendant's post-arrest silence, even when the defendant takes the stand in his own defense.[28]

Here, the evidence shows that defense counsel repeatedly brought out at trial the fact that no statement from Harrelson existed because Harrelson had a constitutional right to not talk with the police and he exercised that right. The first time was during cross-examination of a detective, and the second time was upon recross-examination of the same detective. And at three different times during closing argument, defense counsel brought out the fact that no statement from Harrelson existed and that Harrelson chose to not talk with the police; one time counsel commented that Harrelson was smart to exercise his right to not talk with the police. The prosecutor, in closing argument, then stated that Harrelson had a right to not talk to the police, and she asked whether talking to the police was the first thing an innocent person does when they see the police.

"Typically, questioning about and commenting upon a defendant's silence or failure to come forward is more prejudicial than probative."[29] However, "because [Harrelson] raised the issue regard-

---

[27] *Johnson,* supra at 710 (1) (d).

[28] *Mallory v. State,* 261 Ga. 625, 629-630 (5) (409 SE2d 839) (1991) (overruled on other grounds by *Chapel v. State,* 270 Ga. 151, 154-156 (4) (510 SE2d 802) (1998)).

[29] *Fullwood v. State,* 304 Ga. App. 341, 343 (3) (696 SE2d 367) (2010) (citing *Mallory,* supra at 630 (5)).

ing his failure to come forward, the prosecutor was legitimately authorized to address it in . . . closing argument."[30]

3. Harrelson contends that because no arrest warrant existed, the trial court erred in denying his motion in limine to exclude evidence that he had been told that a warrant for his arrest was outstanding. The evidence, Harrelson argues, improperly placed his character in issue. We disagree.

On direct examination, Harrelson testified that he had entered the hijacked vehicle "[o]ut of pure shock and fear," in response to Poss pointing a knife at Harrelson, and "scream[ing]" at him to get in the vehicle. Outside the presence of the jury, the prosecutor asked the court for permission to elicit evidence to rebut Harrelson's testimony that he had entered the vehicle out of shock and fear. The prosecutor requested permission to present evidence that an additional different motive, than what Harrelson had testified to, for getting into the vehicle was that he was fearful of being arrested "whether it be on his probation warrant . . . or on this new warrant that he thought was outstanding." During the state's case, Poss had testified that after they had picked up Stephanie Harrelson, they were "headed to Florida." Based on the court's ruling, the prosecutor elicited testimony from Harrelson that a day or two before the incident, Poss told him that a warrant for his arrest was outstanding; and Harrelson did not want to go to jail.

> While motive is not an essential element in the proof of a crime, the State is entitled to present evidence to establish that there was a motive. Evidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue.[31]

The state is allowed to submit evidence to explain what it (the state) contends were the motives and conduct of the appellant, and such evidence is original evidence.[32]

> [W]here the question is, whether the party acted prudently, wisely, or in good faith, the information, on which he acted, whether true or false, is original and material evidence. . . .

---

[30] Id.; see *Gaston v. State*, 257 Ga. App. 480, 484 (3) (571 SE2d 477) (2002) (rejecting claim of improper comment on silence where defense opened the door). See also *Mitchell v. State*, 242 Ga. App. 177, 181 (4) (a) (529 SE2d 169) (2000) (no ineffectiveness where defendant opened the door to prosecutor's cross-examination concerning his silence and counsel failed to object to the cross-examination).

[31] *Mills v. State*, 273 Ga. App. 699, 701 (2) (615 SE2d 824) (2005) (citations and punctuation omitted).

[32] *Brown v. State*, 179 Ga. App. 280, 281 (346 SE2d 85) (1986).

> Conversations addressed to a person, whose criminality is the fact in question, being connected in evidence with some act done by him, are original evidence to show whether he was guilty of a crime, or not. . . . This doctrine applies to all other communications, wherever the fact that such communication was made, and not its truth or falsity, is the point in controversy.[33]

Evidence that Harrelson, who had no vehicle of his own, was told of an outstanding warrant for his arrest, was admissible as original evidence to rebut his explanation that he entered the vehicle out of shock and fear, and to explain the state's theory that his motives and conduct were instead based on the fact that he was told that a warrant for his arrest was outstanding and he did not want to be arrested.[34]

4. Harrelson contends the trial court erred in recharging the jury on the law of conspiracy, absent a request to do so.

After the jury began deliberations, it submitted the following question to the court: "Judge, is the charge of hijacking separate from aiding and abetting or are the two combined?" The trial court inquired of defense counsel and the prosecutor "where did they get the aiding and abetting. Is that in the indictment?" The court reviewed the indictment and noted that the words "aid and abet" were included in the indictment to allege the offense of hijacking a motor vehicle and conspiracy.[35] The court announced its intention to recharge the jury on hijacking and conspiracy. Defense counsel objected to recharging the jury unless the court repeated for the jury the entire charge. The court recharged the jury as originally charged[36] but only on the elements of hijacking a motor vehicle and on the definition of conspiracy.

Later in deliberations the jury posed another question: "what constitutes intentional aiding and abetting as set forth in the indictment on Counts 4, 3, 2, and 1?" Defense counsel again suggested that the court repeat for the jury the entire instructions or charge the jury solely on the definition of intent. This time, the court recharged the jury as originally charged on the definitions of intent and conspiracy; the recharge included instructions defining intent,

---

[33] Id. (citation and punctuation omitted).

[34] Id.; *Mills*, supra (trial court did not err in admitting evidence of an outstanding probation revocation warrant for defendant's arrest, which was relevant to show motive for fleeing from police officer, even though it may have reflected negatively on defendant's character).

[35] The words "aid and abet" were used in each count of the indictment, except with regard to Count 5, which applied to only Stephanie Harrelson.

[36] *Peebles v. State*, 260 Ga. 165, 166 (5) (391 SE2d 639) (1990).

that the state had to prove intent beyond a reasonable doubt, and that the defendant was not presumed to have acted with criminal intent.[37]

"In determining whether the recharge contained error, it is fundamental that we must look at not only the recharge but the original charge as well, as jury instructions must be read and considered as a whole in determining whether the charges contain error."[38] "Where a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury . . . a reviewing court will not disturb a verdict amply authorized by the evidence."[39]

"As a general rule, the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court."[40] "When the jury requests a charge or recharge on a particular point, the trial court has discretion to also give or not give additional instructions."[41] Where a recharge on a particular offense is authorized by the evidence and legally accurate, there is no abuse of discretion and no error in the court recharging the jury as requested.[42]

The original charge of the court presented the law applicable to the case and was not likely to confuse the jury. The court charged, inter alia, on the presumption of innocence, reasonable doubt, burden of proof, direct and circumstantial evidence, credibility of the witnesses, conflict in the evidence, motive, the definitions of the crimes charged, intent, mere presence, conspiracy, and parties to a crime. Each relevant count of the indictment expressly alleged commission of the offense under the theory of a party to the crime, which embodied the theory of conspiracy.[43]

By its first question, the jury expressed confusion about the relationship between the theory of culpability (i.e., as parties to a crime or conspiracy, by designation of the words "aiding or abetting") and the crime (of hijacking a motor vehicle) itself. The recharge the court gave was responsive, and the jury answered affirmatively when the court asked if the question had been answered.[44] The second question showed that the jury was confused about the intent required to support the theory of culpability. A recharge on both points was authorized by the evidence.

---

[37] *Miller v. State*, 221 Ga. App. 718, 718-719 (1) (472 SE2d 697) (1996).

[38] Id. at 719 (1) (citation and punctuation omitted).

[39] Id. at 719-720 (1) (citation and punctuation omitted).

[40] Id. at 719 (1) (citation and punctuation omitted).

[41] *Patterson v. State*, 264 Ga. 593, 594 (2) (449 SE2d 97) (1994).

[42] Id.

[43] *Grant*, supra.

[44] *McCoy v. State*, 273 Ga. 568, 573 (12) (544 SE2d 709) (2001).

The record contains no indication that the jury needed any further clarification concerning the entire jury instructions, which Harrelson sought to have repeated.[45] The record does not support any contention that the recharges, as given, would tend to mislead the jury during the course of its deliberation as to Harrelson's guilt or innocence.[46]

> A mere repetition of a principle of law, while unnecessary, will not work a reversal unless it appears from the charge as a whole that there was such undue emphasis as to result in an unfair statement of the law in relation to the defendant's rights. Mere repetition of a correct and applicable principle of law is not such error as requires reversal unless it takes color of an argumentative or opinionative utterance so as to tend to prejudice the minds of the jury.[47]

The trial court recharged the jury as they were initially charged, and the instructions were authorized by the evidence, legally accurate, and addressed only the jury's specific questions.[48] Harrelson has offered no rationale for his assertion that the repetition of the correct statements of law served to prejudice the minds of the jury.[49] Accordingly, we find no abuse of discretion.[50]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED NOVEMBER 18, 2011.

*Joseph E. East*, for appellant.
*Richard E. Currie, District Attorney, Michelle C. McIntire, Assistant District Attorney*, for appellee.

---

[45] *Miller*, supra at 719-720 (1).

[46] Id.

[47] *Hill v. State*, 207 Ga. App. 65, 67 (4) (426 SE2d 915) (1993) (citation and punctuation omitted).

[48] *Peebles*, supra at 167 (5); *Patterson*, supra.

[49] *Hill*, supra.

[50] *Peebles*, supra. .