A03A0090. PEARSON v. THE STATE.
(574 SE2d 820)

ELDRIDGE, Judge.

A Walton County jury found Isaac Pearson guilty of twenty felony counts as follows: one count of kidnapping with bodily injury; two counts of kidnapping; one count of burglary; one count of armed robbery; one count of aggravated battery; three counts of aggravated assault; one count of hijacking a motor vehicle; and ten counts of possession of a firearm during the commission of a crime. Pearson appeals his conviction, and upon review of the record, we affirm.

Viewed to support the verdict,[1] the evidence of record shows that Pearson and three other men approached Edward Walton outside his mother's house. Pearson was carrying a handgun, as was each of the men with him. Walton was struck in the head with a gun, and his arms and legs were strapped with duct tape. Pearson and the other perpetrators dragged Walton into the kitchen of his mother's house and beat him while demanding drugs and money; Walton insisted that he had no drugs or money.

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Pearson located Walton's mother, Edna Walton, in the house; he put a gun to her head and forced her into the living room. Walton's aunt, Floydia Whipple, was forced at gunpoint from her bedroom into the living room. The perpetrators removed money from Whipple's purse; $300 was also removed from Mrs. Walton's purse on her dresser. The women were taken to the kitchen and made to get on their knees. Thereafter, Pearson forced the women at gunpoint into a back bedroom. The women's arms and legs were bound with duct tape.

Still demanding drugs and money, Pearson and the perpetrators located an electric iron in the house and plugged it into an outlet in a bathroom. Edward Walton testified, "So they plugged the iron up, my mama's house iron up in the bathroom, and they drug me back in the hallway and they pulled my pants down and they went to putting the iron all over my body and stuff demanding the money." Photographic exhibits of the burns sustained by Walton corroborate his testimony and show extensive injuries.

When such methods did not produce information about drugs and money, Pearson and the other perpetrators took the keys to a Chevrolet Tahoe from Walton's bedroom dresser. Walton was dragged from the house and placed into the backseat of the Tahoe; he was told, "You gonna tell us where somebody got some money. . . . We fixing to take your ass with us and we're going to kill you if you don't." Edward Walton was driven around for approximately 15 minutes with accompanying threats that "we fixing to take your ass and kill you and throw you in a pond or lake somewhere." Meanwhile, his mother had freed herself from the duct tape, and the police had been called. A lookout was placed on Mrs. Walton's Tahoe. A patrol officer spotted the vehicle at the intersection of Highway 78 and Sardis Church Road near Loganville. The officer followed the Tahoe, which was "taking off at a pretty fast pace." Shortly thereafter, the Tahoe wrecked, and the perpetrators fled. Edward Walton was able to escape. Subsequent investigation led to Pearson's arrest. *Held*:

1. Pearson challenges the sufficiency of the evidence against him only as to his conviction for the offense of hijacking a motor vehicle; he contends that there was no evidence that he took the vehicle in question from "the immediate presence" of the victim as required by OCGA § 16-5-44.1 (b). We disagree.

A person commits the offense of hijacking a motor vehicle when such person "while in possession of a firearm or weapon obtains a motor vehicle from the person or presence of another by force and violence or intimidation or attempts or conspires to do so."[2] "We have

---

[2] OCGA § 16-5-44.1 (b).

construed similar language in the armed robbery statute, OCGA § 16-8-41 (a). In that context, 'immediate presence' has been held to extend fairly far, and robbery convictions are upheld even out of the physical presence of the victim."[3] Here, although Edward Walton was not initially in the Tahoe, it was parked just outside his house, and "he could have accessed it within seconds."[4] In addition, the keys were removed from Walton's dresser, i.e., his control, by a perpetrator armed with a handgun, and Walton was then forced into the back of the Tahoe at gunpoint as the vehicle was "taken" in his presence. "Given these circumstances, the jury was authorized to find that [Pearson] took the [Tahoe] from [Walton's] 'person or presence' for purposes of the offense of hijacking a motor vehicle."[5]

2. Next, Pearson claims the 20-count indictment was flawed because only the first count followed the form authorized by OCGA § 17-7-54, while the remainder of the counts were stated in the language of an accusation.

The face of the indictment lists all of the 20 counts charged against Pearson, and immediately under such list, the foreman of the grand jury, John H. Redding, signed his name attesting to the fact that a true bill was returned during the May Term 2000 as to such counts, under Indictment No. 00CR-0433-3. Each count of the indictment is on a page marked "Bill of Indictment" with the corresponding Indictment No. 00CR-0433-3. The true bill was filed with the court on June 19, 2000, and Pearson waived formal arraignment and entered a "not guilty" plea to the indictment on July 6, 2000. Thus, and in the absence of any evidence to the contrary, the record sufficiently shows that Pearson joined issue and was tried on an indictment returned by the grand jury, not on an accusation.

We agree with Pearson, however, that Counts 2 through 20 of the indictment are not stated in the language contemplated by OCGA § 17-7-54 (b); but this complaint goes solely to the *form* of the indictment, not the merits.[6] And it is well established that, "All exceptions which go merely to the form of an indictment or accusation shall be made before trial."[7] No such exception having been made in this case, the instant claim of error is waived.[8]

---

[3] (Citation, punctuation and footnote omitted.) *Johnson v. State*, 246 Ga. App. 109, 112 (3) (539 SE2d 605) (2000).

[4] Id.

[5] Id.

[6] OCGA § 17-7-54 states in pertinent part that, "The *form* of every indictment shall be substantially as follows. . . . If there should be more than one count, each additional count shall state: And the jurors aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse (name of the accused) with having committed the offense of _____." (Emphasis supplied.)

[7] OCGA §§ 17-7-113; 17-7-111.

[8] *Selley v. State*, 237 Ga. App. 47, 50 (514 SE2d 706) (1999).

As Pearson was tried on an indictment, his reliance on OCGA § 17-7-70 (a) and related cases concerning the State's failure to try a defendant on a felony indictment or obtain a written waiver of indictment is misplaced.[9] Accordingly, there is no merit to Pearson's attempts to avoid waiver by claiming his convictions are "null and void" as having been obtained without indictment or a written waiver thereof.[10]

In addition, Pearson's motion in arrest of judgment filed on February 19, 2002, is insufficient to preserve the instant claim of error. Such motion is the wrong vehicle by which to challenge the form of an indictment.[11] Moreover, the motion was filed over a year after the verdict was returned and judgment entered; thus, the trial court was authorized to deny the motion as untimely.[12]

3. Pearson contends that Count 9 of the indictment charging him with hijacking a motor vehicle is "null and void"; he asserts that, contrary to the hijacking statute, OCGA § 16-5-44.1, Count 9 alleges "the forcible act by means of which the theft occurred did not involve the use of a weapon, but hands to bind the victims" with duct tape. We disagree.

(a) Pearson failed to raise the instant claim of error by way of either a general demurrer or a timely filed motion in arrest of judgment.

> If the indictment was void for any reason, the question should have been raised by demurrer before pleading to the merits, or by motion in arrest of judgment after conviction. No demurrers or [timely] motions in arrest of judgment were filed by [Pearson]. . . . Under controlling Supreme Court authority, [Pearson's] motion for new trial cannot be considered to be a viable procedural substitute for a motion in arrest of judgment.[13]

Therefore, we find that the instant claim of error has not been preserved for appellate review.

(b) A person commits the offense of hijacking a motor vehicle when such person "while in possession of a firearm or weapon obtains a motor vehicle from the person or presence of another by

---

[9] See *Weatherbed v. State*, 271 Ga. 736 (524 SE2d 452) (1999).

[10] Id. at 737 ("Because of the failure to indict Weatherbed, his conviction and sentence are void and must be reversed.").

[11] *Jones v. State*, 240 Ga. App. 484, 486 (523 SE2d 73) (1999).

[12] OCGA § 17-9-61 (b); *Orr v. State*, 275 Ga. 141 (562 SE2d 498) (2002).

[13] (Citation, punctuation, footnote and emphasis omitted.) *Parks v. State*, 246 Ga. App. 888, 889 (543 SE2d 39) (2000).

force and violence or intimidation or attempts or conspires to do so."[14] The indictment in this case charged Pearson with hijacking a motor vehicle in that Pearson:

> while in possession of a firearm, to wit: a pistol, make and model unknown, obtained a motor vehicle from another by violence and intimidation, to wit: did take a 1998 Chevrolet Tahoe from the presence of Edna Walton and Edward Jerome Walton, by beating Edward Walton and binding both with duct tape.

The allegata of Count 9 of the indictment contains the essential elements of the offense, i.e., that Pearson was in possession of a weapon; that he took a vehicle from the person or presence of another while in possession of such weapon; and that he used force, violence, or intimidation to accomplish the taking. Accordingly, Count 9 is sufficient to withstand demurrer.[15] There is no requirement, as Pearson appears to suggest, that the force, violence, or intimidation which accompanies a hijacking be carried out specifically by *using* the firearm/weapon in a forceful act. OCGA § 16-5-44.1 (b) requires that the defendant be clearly in *possession* of a firearm/weapon during the hijacking.

4. In his next claim of error, Pearson alleges he received ineffective assistance of counsel based on counsel's failure to demur to the indictment on the bases articulated in Divisions 2 and 3, supra, which failure results in waiver as to the merits of the contentions asserted therein. However, this claim of error, too, is waived for the reasons that follow.

On February 22, 2001, Pearson was appointed appellate counsel to pursue a motion for new trial. Such motion as filed and amended alleged, inter alia, ineffective assistance of counsel against Pearson's trial attorney on several grounds not raised in the instant appeal. On November 1 and 16, 2001, lengthy hearings were held with regard to Pearson's motion for new trial, which included testimony from Pearson's trial attorney as to the allegations of ineffective assistance.

Thereafter, on February 11, 2002, following the withdrawal of Pearson's attorney, current appellate counsel was appointed. A motion in arrest of judgment asserting the claim contained in Division 2, supra, was filed untimely by current counsel on February 19, 2002. An amendment to the motion in arrest of judgment asserting the claim contained in Division 3, supra, was untimely filed on February 20, 2002. Then, on February 21, 2002, counsel filed a second

---

[14] OCGA § 16-5-44.1 (b).
[15] *Thomason v. State*, 268 Ga. 298, 312 (10) (486 SE2d 861) (1997).

amended motion for new trial, claiming error in the trial court's charge and raising merger issues as to the offenses for which Pearson was sentenced. Four months later, the trial court issued an order denying Pearson's motion for new trial. The allegations of ineffective assistance of counsel now asserted before this Court were never raised in the court below.

> An ineffectiveness claim must be raised at the earliest practicable moment. There is no indication that this was done here. Appellate counsel had ample opportunity to amend the motion for new trial to add a claim of ineffective assistance of trial counsel before the ruling of the trial court on the motion precluded such amendment. Consequently, this claim of error was waived.[16]

5. Next, Pearson claims error in the trial court's charge to the jury. He contends (a) that after agreeing to give an identification charge pursuant to Pearson's oral request, the trial court erred by failing to give such charge; and (b) that the trial court's charge to the jury "authorizing the inference of intent to steal from entry where goods are stored is unconstitutionally burden-shifting and lessened the state's burden." The contentions are meritless.

(a) Pearson did not submit requests to charge. During the charge conference, Pearson's attorney stated: "I think the case is pretty much straightforward other than the fact I would ask the Court to charge on identification. I'm sure that's one you plan to charge." The trial court agreed that his jury charge would instruct the jury on identification.

Subsequently, the trial court charged the jury on the presumption of innocence and the State's burden of proof. In addition, the court charged the jury on criminal intent and,

> that the defendant knowingly and intentionally participated in or helped in the commission of the crime must be proved by the State beyond a reasonable doubt. If you find from the evidence in this case that a defendant had no knowledge that a crime was being committed and that the defendant did not knowingly and intentionally commit, participate, or help in the commission of the alleged offenses, then it would be your duty to acquit the defendant.

The trial court further charged the jury on the insufficiency of "grave suspicion" to prove identity and, with regard to accomplice testi-

---

[16] (Footnotes omitted.) *Buchanan v. State*, 254 Ga. App. 249, 253 (562 SE2d 216) (2002).

mony, charged the jury that corroborating evidence of an accomplice's testimony "must be sufficient to connect the accused with the criminal act, and must be more than sufficient to merely cast upon the accused a grave suspicion of guilt."

We find these pattern charges sufficient to apprise the jury on "identity," i.e., that the State had to prove beyond a reasonable doubt that Pearson committed or participated in the commission of the charged offenses.[17]

Moreover, Pearson fails to direct our attention to any particular charge on "identity" that the trial court should have given in addition to the above pattern charges. Absent a request to give a specific jury instruction containing specific language which was, in fact, omitted from the jury charge, we cannot perceive any error in the trial court's charge on "identity" using the pattern charges referenced above. "The court's instruction to the jury, when viewed as a whole, fairly and accurately presented the relevant considerations."[18]

(b) Pearson asserts as burden-shifting the trial court's charge to the jury authorizing an inference of the intent to steal where evidence shows an unlawful entry into a building containing valuable goods. This issue has been decided adversely to Pearson.[19] Further, contrary to Pearson's assertion, the trial court's charge as given immediately asserted the jury's right to decide whether such inference should be drawn.[20]

6. Pearson claims that all ten counts of possession of a firearm during the commission of a felony merge into one count; he contends that "proof of his possession of the firearm during the commission of any of the felonies 'used up' the evidence of his unlawful possession necessary to prove that possession as to any other felony committed during the same transaction." We disagree.

OCGA § 16-11-106 (e) specifically states that possession of a firearm during the commission of any of the felonies designated in such Code section "shall be considered a separate offense."

> The offense of possession of a firearm during the commission of a felony does not merge into the felony upon convictions for both. . . . Thus, there is express legislative intent to impose double punishment for conduct which violates both [OCGA § 16-11-106 (b) and (c)] and other felony statutes.

---

[17] See, e.g., *Jones v. State*, 273 Ga. 213, 219-220 (3) (c) (539 SE2d 143) (2000); *Robertson v. State*, 234 Ga. App. 189, 190 (4) (505 SE2d 849) (1998).

[18] (Citation and punctuation omitted.) *Hightower v. State*, 224 Ga. App. 703, 704 (1) (481 SE2d 867) (1997). See also *Poe v. State*, 254 Ga. App. 767, 769 (2) (563 SE2d 904) (2002).

[19] *Tate v. State*, 253 Ga. App. 723, 724 (3) (560 SE2d 303) (2002), citing *Thomas v. State*, 274 Ga. 156, 163-164 (9) (549 SE2d 359) (2001).

[20] See *Smith v. State*, 239 Ga. App. 515, 517 (4) (521 SE2d 450) (1999).

> Such double punishment is not constitutionally prohibited, nor is it violative of our double jeopardy statutes to convict a person of both possession of a firearm during the commission of a felony and the accompanying felony in a single prosecution.[21]

Consequently, Pearson's possession of a firearm during the commission of each of the ten different felonies charged in Counts 1 through 10 of the indictment authorized additional indictment on the "separate offense" under OCGA § 16-11-106 of possession of a firearm during the commission of each felony, as is reflected in Counts 11 through 20 of the indictment.

Moreover, the fact that the same gun was used to perpetrate all of the felony offenses is legally meaningless; contrary to Pearson's contention, the initial weapon possession charge in Count 11 did not "use up" the handgun evidence with regard to Pearson's possession of such weapon during the perpetration of the other felonies. The evidence is that Pearson possessed a weapon during the commission of each, separate felony. And such weapon *possession* while committing each felony — regardless of whether it was the same weapon — is the prohibited conduct under OCGA § 16-11-106 (b) and (c).[22] Accordingly, the separate weapon possession charges in Counts 11 through 20 of the indictment do not merge.

7. Finally, we reject Pearson's contentions regarding the factual merger of certain substantive offenses Pearson committed against Edna Walton and Whipple.

The aggravated assault of Mrs. Walton took place when a gun was put to her head. The armed robbery of Mrs. Walton occurred when an armed perpetrator took money from her purse on her dresser. The kidnapping of Mrs. Walton occurred when she was later forced into the back bedroom and bound with duct tape. These offenses do not merge "as the offenses were . . . separate, distinct, and sequential crimes against the victim."[23]

Similarly, the aggravated assault of Whipple occurred when a gunman approached her in her bedroom and "scared [her] to death almost." The offense of kidnapping occurred when Whipple was later forced into the back bedroom and bound with duct tape. These offenses do not factually merge, since "[t]he evidence clearly shows the commission of two separate and distinct offenses."[24]

---

[21] (Citation and punctuation omitted.) *Miller v. State*, 250 Ga. 436, 437 (2) (298 SE2d 509) (1983).

[22] *Clark v. State*, 206 Ga. App. 10, 11 (1) (424 SE2d 310) (1992).

[23] (Citation omitted.) *Jordan v. State*, 242 Ga. App. 408, 409 (3) (530 SE2d 42) (2000).

[24] (Citations omitted.) *Parker v. State*, 220 Ga. App. 303, 313 (14) (469 SE2d 410) (1996).

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 14, 2002 —
RECONSIDERATION DENIED DECEMBER 3, 2002

*John T. Strauss*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Jeffrey L. Foster, Assistant District Attorney*, for appellee.